Smith *v.* Parker.

---

## SMITH *v.* PARKER.

[No. 17,836. Filed Jan. 15, 1897. Rehearing denied May 25, 1897.]

FRAUD.—*Representations Upon Which Action Can Be Predicated.*— Representations upon which an action for fraud can be predicated must be of alleged existing facts, and not upon promises to be performed. *pp. 131–133.*

DAMAGES.—*Basis of Action.—Refusal to Loan Money.—Measure of Damages.*—In contemplation of law money is always in the market and procurable at the lawful rate of interest, and the measure of damages for refusal to loan money pursuant to agreement is the difference between the interest agreed to be paid and what plaintiff was compelled to pay to borrow the money; and where no statement is made in the complaint of the rate of interest that defendant was to receive, and no statement of what the current rate of interest was, or what the money could have been procured for, no basis can be fixed for estimating or measuring the damages. *p. 133.*

CORPORATIONS.—*Contract Entered Into by Promoters.*—A corporation is not bound by a contract entered into by its promoters, unless, after its organization, it adopts such contract. *pp. 133, 134.*

SAME.—*Stockholder.—Breach of Contract.*—A stockholder of a corporation cannot maintain an action against a third party for a breach of contract with the corporation. *p. 134.*

APPEAL AND ERROR.—*Nominal Damages.—Failure to Assess.*—A judgment will not be reversed in this court for failure to assess nominal damages. *p. 134.*

From the Hendricks Circuit Court. *Affirmed.*

*S. M. Shepard, Brill & Harvey* and *McBride & Denny,* for appellant.

*E. G. Hogate* and *J. L. Clark,* for appellee.

McCABE, J.—The circuit court sustained a several demurrer to each of the two paragraphs of the complaint for want of sufficient facts, and the plaintiff refusing to amend or plead further, and standing upon his complaint, the court rendered judgment for the defendant.

The substance of the first paragraph of the complaint is as follows: The plaintiff complains of the defendant and says that on March 9, 1886, he obtained letters patent of the United States for an improvement in flour scoops and sifters; that afterwards, on April 26, 1887, Elmer E. Smith (a son of his plaintiff), Alfred Welshans, Elisha H. Hall and Chester F. Hall, organized a corporation under the laws of Indiana, for the purpose of manufacturing and selling flour scoops and sifters, strainers, etc.; that the capital stock of said company was fixed at $5,000.00; afterwards said company which had adopted the name of "The Smith Manufacturing Company," made a contract with plaintiff whereby it was agreed, that the said company should have the right to manufacture flour scoops and sifters and other articles, under the said letters patent, so issued to this plaintiff, and as a compensation for such right and license, the company agreed to, and did issue to this plaintiff, paid up stock in said company, of one-fourth of the capital stock of said company, and by such agreement, was to and did thereafter, until, as otherwise hereinafter stated, pay to this plaintiff, as a royalty on each and every article made, or parts thereof made under said letters patent,

one cent each on flour scoops and sifters, strainers, etc.; that the Smith Manufacturing Company commenced doing business immediately after such con-tract, and, although said company had limited means and small capital it succeeded in building up a large and rapidly growing business, and but for said limited means would have been able to have greatly enlarged its business; and thus matters stood until about the first of July, 1888, when the defendant, seeing the business was a prosperous one, and desiring to get control of the same, purchased the shares of capital stock owned by said Welshans and the two Halls. At the time of said purchase, plaintiff individually owned tools used in said business of the value of $400.00; that plaintiff had owing to him on a contract for manufacturing said articles for said company the further sum of $500.00; that when said defendant had purchased said shares of stock, and got an insight into its business, he represented to this plaintiff, that he, defendant, had plenty of means, and could command money in sufficient quantity to run said business upon a large scale, and, thereupon, defendant falsely and fraudulently represented to plaintiff that if plaintiff would consent to the formation of a new company and would assign his said patent to said new company, absolutely, and forego his, plaintiff's rights to royalties on articles manufactured under said patent, and would put in said tools and materials then on hand, and release his claim for money due on said contract with said old company, that they would form and organize a new company under the name of the William Smith Company, of Danville, Indiana; and if that was done defendant could and would furnish the new company with all the money it might require to make it a large and prosperous business, and this plaintiff having but

little means, and being desirous of increasing said business, and relying upon the representations of said defendant, and fully believing that said defendant would furnish said new company means in abundance to run such business upon a large scale, thereupon plaintiff at the special instance and request of said defendant joined in the organization of the William Smith Company, of Danville, Indiana, as a corporation, under the laws of the State of Indiana, with a capital stock of $10,000.00 of which $2,000.00 was issued to plaintiff, and defendant received of such capital stock $5,000.00.

Thereupon, plaintiff, relying upon such representations, did on July 7, 1888, assign his said letters patent to said William Smith Company; that immediately after such new company had been organized, defendant induced Frederick Neiger to purchase $1,000.00 of said stock, and Mrs. Dempsey $1,000.00; a Mr. Crabb $5,000.00 and a Mr. Ferree $50.00; said Crabb was then and there the father-in-law of said defendant, and said Ferree was a brother-in-law; so that in the family of said defendant there was a controlling interest in said capital stock of said new company, and that at the first annual meeting of the stockholders of said company, this plaintiff was purposely omitted from the directory of said company, and the said family combination took possession of all the principal official situations in said new company, and thereafter controlled and managed the said affairs of said new company, built a factory on credit, bought other patents on royalty, and run things as far as possible on credit, yet, notwithstanding the business was making money and doing a prosperous business, by reason of the expense of taking in other manufactures, and by the mismanagement of said defendant, Parker, and his failure to furnish money of his own to put into the

business, said new company became insolvent. Defendant found in the course of the management of the business that said patents were valuable, and he determined to wreck said company and become the sole possessor of said patents, and to that end he studiously, fraudulently, and persistently refused to put in any money to run said business, but in every possible way sought by withholding his money so to embarrass said business as would, and finally did, result in the disaster to said business of said company. Afterwards, at the March term of the Hendricks Circuit Court for 1890, said Parker and others, filed in said court a petition for a receiver of said new company, and said Parker by virtue thereof had said business sold by a receiver, and said defendant, Parker, became the purchaser of the assets of said company, and the owner of said letters patent. And plaintiff says that by reason of said wrongful and fraudulent conduct of said defendant, the plaintiff has been deprived of said patent, which was and is valuable, and the use and benefit thereof; has lost his tools and materials so put in, and money so owing to said plaintiff by said old company, and is damaged thereby in the sum of $50,000.00, wherefore, etc.

The theory of this paragraph, as counsel on both sides agree, is an action for damages caused by fraud. It is contended by the appellee's counsel, in support of the ruling of the court below, that the fraud or misrepresentation which affords a ground of action for damages must be as to an existing fact or facts. And hence it is argued that as the principal wrong complained of was appellee's failure to furnish the money to run the business of the new company, it does not amount to actionable fraud. Appellant's counsel seek to avoid this contention by urging that an action for damages arising out of a misrepresenta-

tion may be maintained in respect to a fact to trans-
pire in the future, if founded on promises that the de-
fendant never intended to fulfill. They quote a por-
tion of a section of Sutherland on Damages. But the
whole section reads as follows:

"To entitle a party to maintain an action for deceit
by means of false representations he must, among
other things, show that the defendant made false and
fraudulent assertions in regard to some fact or facts
material to the transaction in which he was defrauded
by means of which he was induced to enter into it.
The misrepresentation must relate to alleged facts, or
to the condition of things as then existent. It is not
every misrepresentation relating to the subject-matter
of the contract which will render it void, or enable the
aggrieved party to maintain an action for deceit. It
must be as to matters of fact substantially affecting
his interests, not as to matters of opinion, judgment,
probability or expectation. Representations made in
respect to a fact to transpire in the future must be a
mere promise or an opinion, and will not of themselves
support an action for fraud, though a party may be
liable for fraud by obtaining property on promises
which he never intends to fulfill." Sutherland on
Damages (2d ed.), section 1167.

There is no allegation in the paragraph in question
that the appellee when he made the alleged promises
never intended to fulfill them. Nor is there anything
in the pleading from which that fact could be reason-
ably inferred, even if that would supply the place of an
allegation of such fact.

In the case of *Child* v. *Swain*, 69 Ind. 230, also
cited by appellant, it was expressly found that: "At
the time said Child entered into said contract  *   *
*   he did not intend to carry out and perform his part
thereof, but he intended to get the money of said

Swain and said Graham and give them no value therefor."

If it be said that the latter case was a suit for a breach of contract, and not for fraud, then it is wholly inapplicable to the paragraph in question which, as we have seen, is an action for damages for fraud.

It is settled law that representations upon which an action for fraud can be predicated, must be of alleged existing facts and not upon promises to be performed in the future. *Balue* v. *Taylor*, 136 Ind. 368; *Bennett* v. *McIntire*, 121 Ind. 231, and cases there cited.

Besides, this paragraph states no facts from which a basis can be fixed for estimating or measuring the damages. The measure of damages for refusal to loan money pursuant to agreement is the difference between the interest agreed to be paid and what the plaintiff was compelled to pay to borrow the money. In contemplation of law money is always in the market, and procurable at the lawful rate of interest. *Lowe* v. *Turpie*, 147 Ind. 652.

There is no statement of the rate of interest that appellee was to receive, and no statement of what the current rate of interest was, or what the money could have been procured for.

The second paragraph counts on the same facts and is, in theory, a suit for breach of the same contract to furnish the new company money to carry on its business. This contract run in favor of the new corporation before it was organized between two persons, who seem to have been its promoters. A corporation is not bound by such a contract, unless after its organization it adopts such contract. The obligation of the corporation does not rest on any supposed agency of the promoters and a ratification of their acts, but upon the immediate and voluntary act of the company. The adoption of such agreement by the corporation after

its formation may be implied by the acts or acquies-
cence of the corporation or its agents without any
express acceptance.  After a corporation knowingly
receives the benefit of an engagement entered into
by its promoters prior to its organization, it will
usually not be permitted to deny that it agreed to as-
sume the corresponding burdens.  1 Morawetz on
Priv. Corp., sections 547-549.  The second paragraph
sufficiently shows that the new corporation had know-
ingly received some of the benefits of said contract.
And, therefore, it sufficiently appears that the new
corporation had accepted and adopted the contract
sued on, and as that contract is the obligation of the
defendant to the new corporation and to nobody else,
the question arises whether the appellant though a
stockholder in the new corporation has any right of
action for a breach of that contract; or in other words,
does a breach of that contract make a cause of action
in his favor against the defendant?  That question
has been answered in the negative by this court in
*Tomlinson* v. *Bricklayers' Union, etc.*, 87 Ind. 308.  It was
there held that a cause of action in favor of a private
corporation could not constitute a cause of action in
favor of one of its stockholders.  There are other de-
fects in the paragraph in question.  For instance,
there are not facts enough stated to enable the court
in applying the law to prescribe any measure of dam-
ages beyond nominal damages.  *Lowe* v. *Turpie, supra.*
A failure to assess nominal damages affords no
grounds for the reversal of a judgment in this court.
*Patton* v. *Hamilton*, 12 Ind. 256; *Hacker* v. *Blake*, 17
Ind. 97; *Black* v. *Coan*, 48 Ind. 385; *Mahoney* v. *Rob-
bins*, 49 Ind. 146; *Wimberg* v. *Schwegeman*, 97 Ind.
528.

Moreover, the appellee's counsel present a very se-
rious question which must be decided in favor of ap-

pellant before he can have a reversal in contending as they do, that the contract to furnish money is so vague and uncertain as to what the defendant bound himself to do as to render it void. The rule is thus stated in *Thompson* v. *Gortner*, 73 Md. at p. 482: "The law is too well settled to admit of doubt, that in order to constitute a valid verbal or written agreement, the parties must express themselves in such terms that it can be ascertained to a reasonable degree of certainty what they mean. And if an agreement be so vague and indefinite that it is not possible to collect from it the full intention of the parties, it is void; for neither the court nor the jury can make an agreement for the parties. Such a contract can neither be enforced in equity nor sued upon at law." But the courts are not wholly confined to the language of the contract; where it is ambiguous, oral evidence may be resorted to to apply the contract to its proper subject-matter. An eminent author says: "Now, where does the law stop in this endeavor to remove uncertainty? We answer, not until it is found that the contract must be set aside, and another one substituted, before certainty can be attained. In other words, if the contract which the parties have made is incurably uncertain, the law will not or rather cannot enforce it; and will not, on the pretense of enforcing it, set up a different but valid one in its stead." 2 Parson Cont. (8th ed.) 561; 1 Beach Cont., sections 72, 73 and authorities there cited. *Rue* v. *Rue*, 21 N. J. Law 369-377.

It is insisted by the learned counsel for the appellant that the contract sued on here is no more uncertain than was the contract in *Child* v. *Swain, supra;* which it is asserted this court enforced. But there is not a word from the beginning to the end of the report of that case to indicate whether the contract was certain or uncertain. No question was made

Thompson *et al. v.* Board of Com'rs of Jasper County *et al.*

or decided in the case as to the certainty or uncer-
tainty of the contract. The court finds simply that
the contract, a copy of which is filed with the com-
plaint, was entered into without setting it out or stat-
ing its provisions.

But we need not and do not determine whether the
contract sued on here was void for uncertainty as the
other objections above mentioned to the second para-
graph are fatal. The circuit court did not err in sus-
taining the demurrer to either paragraph of the com-
plaint.

Judgment affirmed.