## Builders' Duntile Company v. W. E. Dunn Manufacturing Company.

(Decided May 21, 1929.)

WHEELER & HUGHES for appellant.

EATON & BOYD for appellee.

Opinion of the Court by Commissioner Hobson—Reversing.

The W. E. Dunn Manufacturing Company manufactures machinery for making duntile, which is a hollow building tile. B. H. Samuels, of Paducah, received some of its advertising showing that its duntiles were fireproof, moisture proof, and sold at a cost below that of other construction material of equal qualities. After some correspondence the company sent its agent, Mr. Gaston, to Paducah, in April, 1925. Samuels told Gaston that he was organizing a company to manufacture these duntiles. He and Gaston went to see one or two of the other promoters of the proposed corporation, and also went to see a banker from whom they expected to get some money. One of the other promoters was out of the city. Samuels preferred to organize the corporation and then make the contract for the machinery. Gaston wished him to order the machinery then, and go ahead with the corporation afterwards. After talking it over with the other promoters who were in the city, Samuels signed a contract, in the usual form, ordering the machinery on April 23. The contract contained this provision: "W E. Dunn Manufacturing Company agrees to furnish, free of charge, an experienced service man for a period of five days to insure proper installation and instruct your force." The order, signed by Samuels, was accepted by the company. The machinery was shipped and reached Paducah on June 6.

On June 16, the experienced man provided in the contract, Mr. Aaron, reached Paducah and began setting up the machinery. On June 20, the articles of incorporation of the Builders' Duntile Company were filed by Samuels and his associates. The capital stock was fixed at $10,000. Samuels had paid out or assumed to pay $5,100 for the machinery and other expenses, and stock for this amount was ordered issued to him, and other amounts to the other promoters of the corporation. After Aaron had set up the machinery and instructed the men how to operate it, he commenced making duntiles, and remained there in all about five days to get the thing going. After he left it turned out that the blocks so made were inferior in quality and practically valueless for building purposes. The Builders' Duntile Company wrote to the manufacturer. Some correspondence followed, and some two months later the manufacturer sent another man to the

plant, Mr. Terrell, who found that the machinery had not been put up right by Aaron, and that Aaron had given the wrong formula as to the mixing of the ingredients. After Terrell had properly set up the machinery and properly mixed the material, the machinery produced good results. This action was brought by the Builders' Duntile Company against the W. E. Dunn Manufacturing Company to recover on the written contract made on April 23 by Samuels. The court peremptorily instructed the jury to find for the defendant. The plaintiff appeals.

The case turns on the right of a corporation to sue upon a contract made on its behalf by one of its promoters before it was organized. In 1 Thompson on Corporations, sec. 113, the rule is thus stated: ''The weight of authority is very clear on the question of the power of a corporation to adopt a contract of the promoters. The power is conceded, and the effect of the adoption is said to be to make the contract that of the corporation. This power of the corporation to adopt a contract must necessarily be understood to be limited to such contracts as the corporation itself, after its organization, would be authorized to make.'' To the same effect, see 7 R. C. L. p. 82, sec. 62; 14 C. J. p. 259, sec. 290; Stanton v. N. Y. & E. R. Co., 59 Conn. 272, 22 A. 300, 21 Am. St. Rep. 110, and cases cited.

While there is some conflict of authority on the question, and while in the cases the question has arisen oftener on the corporation's liability on the contract than on its right to enforce the contract, upon both principle and the weight of authority the corporation may sue upon the contract made by its promoters for it, when it has adopted the contract.

In this case it was clearly understood between Samuels and the other promoters and Gaston, the agent of the manufacturer, that the contract was made on behalf of the corporation which they proposed to form, and when the corporation was formed the incorporators took over the whole thing, and ratified all that had been done on its behalf. To deny the corporation the right to sue for damages for the breach of contract and the loss it sustained by reason of the first agent's negligence and improper acts would be to deny it all remedy for the breach of the contract, for Samuels did not make the contract for himself, and he personally did not sustain the damages. The corporation only sustained the damages resulting from the breach of the contract. The form

572

of the contract was due simply to the fact that Gaston insisted that it would take time to ship the machinery and get it there, and that it would be better to make the order while he was there, and that they could subsequently organize the corporation. The form of the transaction was due to the fact that the manufacturer's agent asked that the contract be put in this form. The corporation was the real party in interest, and the action was properly brought in its name. The amended petition joining B. H. Samuels as a party plaintiff should have been allowed to be filed, as the contract was not assignable by statute, and no formal assignment to the corporation had been made. Civil Code, sec. 19; Kentucky Statutes, sec. 474. The contract, though made in the name of Samuels was, as all the parties knew, made in his name for the benefit of the corporation to be organized. He was one of the promoters, and had no intention of buying the machinery for himself. The other promoters, knowing all the facts, recognized this, and so the corporation, when organized, at once took charge of the plant which had been bought for it, and gave Samuels stock to the amount of his expenditures. Though there was no formal assignment of the contract to it, its acts were an adoption of the contract no less than a formal resolution to this effect, spread upon its record, would have been. It was the only person having any real interest in the due performance of the contract, and is the proper party to recover for its breach. To hold otherwise would be to leave a wrong without a remedy.

Judgment reversed, and cause remanded for further proceedings consistent herewith. Whole court sitting.