**LUCAS et al. v. HAMILTON REALTY CORPORATION.**

No. 7242.

United States Court of Appeals for the District of Columbia.

Argued April 19, 1939.

Decided June 26, 1939.

---

William C. Sullivan, of Washington, D. C., for appellants.

Frederick A. Ballard and J. Wilmer Latimer, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and STEPHENS and VINSON, Associate Justices.

GRONER, C. J.

Appellants, who were plaintiffs in the court below, brought this action against

Julius Manger and Hamilton Realty Corporation upon an alleged oral agreement between plaintiffs and Manger to pay them for their services in procuring an agreement of sale from the owners of the Hamilton Hotel in Washington city. The amended declaration was filed in 1935, but before trial Manger died, and the action was continued against only the corporate defendant. The declaration alleged that in March, 1934, Manger employed plaintiffs to assist him or a corporation to be formed by him in the purchase of the Hamilton Hotel and promised that either he, or the corporation to be formed by him, would pay plaintiffs the reasonable value of their services; that plaintiffs rendered valuable services, and Manger obtained an agreement to purchase the hotel and caused Hamilton Realty Corporation to be created for the purpose of entering into the contract of purchase, which was subsequently consummated, as the result of which the corporation became and continued thereafter to be the owner of the hotel; that the corporation had full knowledge of the services rendered by. plaintiffs and the agreement made with them by Manger and, by making the purchase with this knowledge, ratified the agreement and adopted the same as its own.

At the trial, counsel for plaintiffs in his opening statement to the jury stated that when Manger met plaintiffs he told them that it was not his custom to take title to property or to make contracts in his own name; that he usually did this by forming a corporation for the purpose, but that, if he did take title himself, he would pay them for their services, and that, if he took title in the name of the corporation, the corporation would pay them. The remainder of the statement followed substantially the allegations of the declaration to which we have referred. Lucas, one of the plaintiffs, was called as the first witness. He testified that he was a hotel broker, and that on March 14, 1934, he

first met Manger in his room in the Mayflower Hotel in the city of Washington. He was then asked by his counsel, "What transpired on that occasion?—State the conversation on both sides". Counsel for the corporation objected to the witness' testifying to any conversation with Manger in relation to his employment, on the ground that counsel's opening statement showed that the corporation was the assignee of Manger and, Manger being dead, the witness was disqualified under the provisions of Section 1064 of the District Code.[1] The particular language used by counsel on which the objection was founded is:

"Manger went back to New York and on June 15 he submitted an offer through his broker to buy the Hamilton for $800,000, $300,000 in cash and $500,000 in bonds. On June 18 that offer was accepted by the Roosevelt Committee. * * *

"On the 3rd of August, 1934, the defendant in this case was organized * * * for the purpose of taking title to the Hamilton Hotel."

The court sustained the objection, but permitted counsel for appellants to offer for the record the evidence excluded by the ruling. As counsel continued with his narrative statement the objections to the particular parts of the evidence relating to the agreement between appellants and Manger were insisted upon, and in each instance the original ruling was adhered to.

Loveless, the other plaintiff, was then called as a witness, and the same ruling was made as to his testimony, and counsel made a similar proffer as to what he would have stated.

Among other matters offered to be proved through Lucas and Loveless were that from March to June of 1934 they were engaged in bringing about an agreement between Manger and the owners of the Hamilton Hotel for its sale to the

[1] "If one of the original parties to a transaction or contract has, since the date thereof, died or become insane or otherwise incapable of testifying in relation thereto, the other party thereto shall not be allowed to testify as to any transaction with or declaration or admission of the said deceased or otherwise incapable party in · any action between said other party or any person claiming under him and the executors, administrators, trustees, heirs, devisees, assignees, committee, or other person legally representing the deceased or otherwise incapable party unless he be first called ·upon to testify in relation to said. transaction or declaration or admission by the other party, or the opposite party first testify in relation to the same, or unless the transaction or contract was made or had with an agent of the said deceased or otherwise incapable party, and said agent testifies in relation thereto." Code of 1901, sec. 1064; Tit. 9, D.C.Code of 1929, sec. 9.

former; that during this period they were in constant touch with Manger and that finally through their efforts Manger succeeded in obtaining an agreement with the owners for the sale of the hotel at $200,000 less than the price he had originally been willing to pay; that the work was done at Manger's request and upon his promise to compensate them either directly or through the corporation he should organize to take over the property.

In explanation of the statement that Manger on June 15 had made an offer for the property, counsel produced a deposition taken by defendant corporation, containing a copy of a letter dated June 15, 1934, written by Manger's New York brokers to the Hamilton Hotel bondholders' committee, as follows:

"This will confirm that Mr. Julius Manger, on behalf of one of his companies, has authorized Mr. W. Albert Pease, Jr. and ourselves to make your Committee another offer for the Hamilton Hotel in Washington as follows:

"The property is to be purchased by Mr. Manger's company for $800,000— $300,000 in cash, and the balance in the form of a 10 year purchase-money mortgage, bearing interest at the rate of 5% and being amortized $25,000 a year. * * *"

The deposition also included the acceptance by the committee, in the following words:

"We had a meeting this morning and found the offer of the Hotel Hamilton acceptable subject to the contract being agreed on."

The contract was eventually agreed to and executed not by Manger but by the defendant corporation, which was created in August.

■ The trial court based its rejection of the evidence upon indications in counsel's opening statement that Manger had made the offer to buy the hotel in his own behalf. The court must have concluded that this fact, considered in connection with the other fact that the corporation was not then in existence, precluded the thought that Manger had acted as agent and therefore necessarily indicated that the defendant corporation had acquired the contract for the purchase of the hotel by assignment from Manger. But we think this does not follow. Counsel's preliminary statement was that Manger had made an offer

and that the offer had been accepted and that later on either Manger or the subsequently formed corporation had entered into a formal contract for the purchase. The offer of proof, however, and the letters and documents received in evidence showed that the original proposal was on behalf "of one of Manger's companies", and the tentative acceptance was conditioned upon an agreement on the terms of a contract with an incorporated purchaser. This negatives the idea that Manger had any transferable rights, and it is a fair assumption that the parties in dealing with one another perfectly understood the offer to mean precisely what subsequently followed. In this aspect, we think that in rejecting the evidence on the opening statement of counsel there was a misconception of the facts on the part of the court. While it is often proper to make rulings, even to the extent of directing a verdict, on the opening statement, the power ought never to be exercised if the statement leaves any doubt as to the facts or permits conflicting inferences. The ruling in the present case amounted practically to a direction of verdict.

■ "The opening statement of counsel is ordinarily intended to do no more than to inform the jury in a general way of the nature of the action and defense so that they may better be prepared to understand the evidence. * * * To warrant the court in directing a verdict for defendant upon that statement, it is not enough that the statement be lacking in definiteness, but it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists." Best v. District of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882.

■ The statement in question indicates, we think, that in the respects mentioned Manger was acting as a promoter and, while the theory of corporate rights and liabilities arising from promoters' contracts has never been satisfactorily explained, the corporation is generally said to "adopt" the promoter's contract and thereby acquire rights (Richard Brown & Son Contracting Co. v. Bambrick Bros. Const. Co., 150 Mo.App. 505, 131 S.W. 134) or incur liabilities. Gardiner v. Equitable Office Building Corp., 2 Cir., 273 F. 441, 17 A.L.R. 431. The adoption of such a contract, however, does not necessarily involve an assignment, and it has been held that the corporation might

adopt a contract made for its benefit and sue on it even though no assignment was possible. Builders' Duntile Co. v. W. E. Dunn Manufacturing Co., 229 Ky. 569, 17 S.W.2d 715, 66 A.L.R. 1423. In our opinion, the proffered evidence tends to prove no more than the adoption by the corporation of the previous arrangement—by no means measuring up to the dignity of a contract—made in its behalf by Manger, and did not involve an assignment. If, at that time, the corporation had been in existence, the relationship of Manger in the circumstances probably would have been that of agent, and the statute admittedly would not have applied. Kelly v. Board of Public Works, 75 Va. 263; South Baltimore Co. v. Muhlbach, 69 Md. 395, 16 A. 117, 1 L.R.A. 507. Since it was afterwards incorporated, the relationship of Manger was, as we have indicated, one more nearly akin to that of promoter, and the statute no more covers the latter than it does that of agent. Cf. Engler v. Ipswich Printing Co., 63 S.D. 1, 256 N.W. 132. We have already held that the statute should be construed strictly, Cush v. Allen, 56 App.D.C. 327, 13 F.2d 299, 54 A.L.R. 261. We have no disposition to depart from that rule. Norris v. Clinkscales, 47 S.C. 488, 25 S.E. 797; Hobbs v. McLean, 117 U.S. 567, 579, 6 S.Ct. 870, 29 L.Ed. 940; Jones on Evidence, 4th Ed., § 772.

Counsel for defendant say, however, that even if the corporation was not an assignee, it was a person legally representing the deceased Manger and therefore within the protection of the statute.[2] In this regard counsel rely upon cases in which it is said that the term "legal representatives" describes persons who in respect to the property of the deceased, whether transferred to them by his act or by operation of law, stand in his place and represent his interest. New York Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, 6 S.Ct. 877, 29 L.Ed. 997. But as we have already stated, there is no showing in this case that the contract to purchase was property or a property right of Manger which the corporation acquired by his act or by operation of law, and hence we think that, even if we gave the language of the statute the broad interpretation contended for, we should still be obliged to hold it inapplicable in the facts of this case.

In consequence of what we have said, and without intimating any opinion on the merits, we think that Section 1064 affords no proper basis for exclusion of the evidence.

■ Other assignments which we think should be noticed relate to the rejection on a different ground of other evidence in relation to the services claimed to have been rendered by plaintiffs in effecting the agreement. Plaintiff Lucas, while on the stand, was asked to testify as to the price at which Loveless had told him the hotel property could be purchased and as to his communication of this information to Manger. He was likewise asked to testify as to conversations with O'Brien, chief accountant and auditor for Manger. Other questions were intended to elicit information in relation to the activities of the plaintiffs both with Manger and his subordinates and with the sellers. While the objections and the rulings of the court do not in every instance show the ground upon which they were based, apparently the exclusion was because the trial court thought the evidence was hearsay. On the other hand, the ground on which it was offered was that it had a tendency to show that the plaintiffs were the efficient cause of the exchange of the property. In other words, it tended to prove performance by plaintiffs of the services on which the suit was based, and not to prove the truth of what was said. We think the rejection was erroneous and that the evidence should have been admitted.

■ The general rule where, as in this case, the fact in issue is whether the plaintiffs were the active and efficient cause of a sale, is that conversations tending to show how they procured the sale and carried through the negotiations are direct and primary evidence on that issue. Glassman v. Barron, 277 Mass. 376, 178 N.E. 628, 631; Henn v. Finley, Iowa, 201 N.W. 783; Peck v. Foote, 147 A. 109, 7 N.J.Misc. 672; Williams v. Sanderson, 150 Ark. 151, 233 S.W. 1093; Tanenbaum v. Nanes, et al., 247 App.Div. 907, 287 N.Y.S. 117.

■ The remaining assignment relates to a letter written by Loveless to Manger on May 5, 1934. The letter reads:

"As per your numerous conversations in Washington and also over the telephone to you in New York, I have been able,

---

[2] "or other person legally representing the deceased". (See n. 1, supra).

according to your instructions to me, to submit to you a proposition from the owners of the Hamilton Hotel for the purchase by you of the said Hamilton.

"Confirming my verbal offer to you, in the presence of your Mr. O'Brien, I desire to reduce to writing the verbal offer I submitted to you. * * *"

The letter then contains the statement that the writer can cause the property to be delivered to Manger at a total purchase price of $850,000 and the terms of payment, and then concludes:

"According to your admission to me that you had offered, through your New York connection, One Million Dollars for the property, surely you can see that I, as the procuring factor, can make you a more attractive deal.

"Nothing in the above as to terms of purchase price etc. is to be construed as final as far as the seller is concerned and awaiting your further advices, as your representative, I will continue negotiations on any lines that you might suggest."

Counsel for the corporation objected to the introduction of the letter in evidence, on the ground that it was a self-serving declaration and also involved a transaction with the deceased Manger, which would make it inadmissible under the "dead man's statute". The court rejected the letter, and we think properly.

No evidence was offered to show mutual correspondence between the plaintiffs and Manger, and the letter in question appears to have been the only one which is alleged to have passed between them. It seems to us that its obvious purpose was self-serving and, if we are correct in this respect, it was clearly inadmissible. In Leach & Co. v. Peirson, 275 U.S. 120, 48 S.Ct. 57, 72 L.Ed. 194, 55 A.L.R. 457, the Supreme Court said:

"A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than he can impose a duty to pay by sending goods. Therefore, a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission."

Nothing appears, so far as the present record is concerned, which would take the offer of the letter out of the general rule. Its whole tenor indicates a purpose to make a record of the services which plaintiffs claim to have performed. It contains no information not already communicated to Manger, and in our view was clearly not a part of the work in which plaintiffs were engaged and was therefore not necessary in the performance of their work. On the present record, we think it was inadmissible.

At the conclusion of the plaintiffs' case the defendant moved the court to direct a verdict in its favor, on the ground that there was no evidence of employment and no evidence of the nature and extent of the services rendered by plaintiffs and, therefore, no basis for a finding by the jury. The motion was granted. Since in our opinion the court was in error in refusing to allow plaintiffs to develop their case and to show the services rendered by them, or to prove the agreement and its adoption by the corporate defendant,—if such agreement and adoption ever took place—a new trial should be awarded.

Reversed and remanded.