HOLLINGSWORTH v. RIEFFER.

No. 581.

Municipal Court of Appeals for the District of Columbia.

Feb. 13, 1948.

Charles J. King, of Washington, D. C., for appellant.

Leroy A. Brill, of Washington, D. C. (Mark P. Friedlander, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

This is a suit for a broker's commission allegedly earned by plaintiff on the sale of a rooming house business previously owned by defendant. The case is here for the second time. At the first trial the court directed a verdict for defendant at the conclusion of plaintiff's evidence. We reversed on the ground that plaintiff's evidence presented a prima facie case. Rieffer v. Hollingsworth, D.C.Mun.App., 52 A. 2d 632. Following a second trial a general finding was entered in favor of plaintiff for the full commission and defendant in turn has now appealed.

With a few exceptions to be presently noted, the evidence at the two trials was generally the same and in our previous opinion we stated the applicable principles of law and hence we deem it unnecessary to review in detail either the facts or the law. Our only problem on this appeal is to determine whether there is sufficient evidence in the record, together with the inferences to be fairly drawn therefrom, to sustain the general finding of the trial court.[1]

At the second trial, as at the first, the principal issues of fact were (1) whether the plaintiff was the procuring cause of the sale ultimately made by defendant to the prospect, a Mr. Creel, (2) whether, after the first negotiations between the defendant and Mr. Creel had been broken off, plaintiff abandoned his efforts to sell the business to Mr. Creel, and (3) whether defendant remained neutral between plaintiff and the other broker to whom the commission for the sale was finally paid. By the trial court's finding all of these issues were resolved in favor of plaintiff.

On the issue of procuring cause there was no dispute that plaintiff, who had a nonexclusive 60-day listing, first interested the ultimate purchaser through advertising, introduced him to defendant, and procured a written offer to buy the business at the total price of $12,000, stated in the listing given by defendant to plaintiff. It was undisputed likewise that plaintiff was the only broker who showed the property to the ultimate purchaser prior to the time the purchaser agreed to the terms on which the business was finally bought and that from the time plaintiff first interviewed the purchaser until the final sale the purchaser remained "interested in the property." It was undisputed also that before the sale was consummated through the second broker both defendant and the second broker knew that the purchaser was the same prospect produced by plaintiff.

On the issue of abandonment the evidence for plaintiff was stronger and more detailed than at the first trial. Plaintiff's listing at $12,000 was dated July 31, 1946. He obtained a signed offer from the ultimate buyer at $12,000 on August 5, 1946. The offer was communicated to defendant the same night and discussed between all parties concerned the following morning, August 6. At this conference several clauses inserted in the proposed contract by Mr. Creel's attorney were objected to by defendant's attorney, but, according to plaintiff's salesman, he told defendant's attorney at the conference that all of the differences could be straightened out except one. The purchaser desired to have the business transferred by an outright bill of sale and to give back a chattel deed of trust to secure the deferred balance of the purchase price; whereas defendant insisted upon selling on a conditional bill of sale. According to plaintiff's witness, Mr. Creel was adamant on this point and, when it was not yielded by defendant, ordered his name stricken from the tendered offer. The conference was then ended.

Plaintiff's salesman testified further that he did not abandon his efforts to bring

[1] Nolan v. Werth, 79 U.S.App.D.C. 33, 142 F.2d 9; Lindquist v. Steele, D.C.Mun.App., 42 A.2d 925.

defendant and Mr. Creel together, but instead, on the following day, he had called upon defendant and urged her to yield on the issue of a chattel mortgage versus a conditional bill of sale, and had also telephoned her one or more times urging her to agree on this point. He said he continued to call her until she said there was another deal pending without revealing that the other deal was with Mr. Creel. This salesman also testified that after the joint conference he had telephoned Mr. Creel's attorney on the same evening and had kept in touch with that attorney for two or three days in an effort to bring the parties together. On August 8, 1946, while plaintiff was still trying to make the sale, defendant gave another broker a written nonexclusive listing for the sale of the business. On August 21, 1946, the purchaser first produced by plaintiff signed an offer to purchase the business through the second broker and this offer was accepted by defendant. At this time plaintiff's listing still had more than 30 days to run.

On the issue of whether defendant remained neutral between the two brokers, the evidence showed that, whereas the lowest price given to plaintiff was $12,000 defendant, while plaintiff was still trying to sell to Mr. Creel, gave the second broker a written listing at $10,000 and finally sold to Creel at $9,500. One of the differences between the parties at the conference arranged by plaintiff was that Creel wanted a three-year lease, whereas defendant said she could arrange only a one-year lease. Nevertheless, in the listing with the second broker defendant stated the business was to be transferred under a one-year lease, "possibly two years," and the contract with Creel accepted by defendant called for a one-year lease with an option to renew for two years. (This provision later was waived by Creel.) Moreover and more important in the ultimate sale, defendant agreed to sell on a chattel deed of trust, the very point on which defendant had refused to yield when dealing through plaintiff. Defendant urges that title to the business was taken by Creel and his mother, and the chattel deed of trust was signed by both, thus adding to defendant's security. It is argued that this fact negatives, in part at least, the contention that the second deal was more favorable to the buyer than the one offered through plaintiff. We consider the point unimportant, particularly since the mother did not sign the sales contract and hence this could not have been an inducement to defendant to accept the offer.

From the foregoing review it is clear that the evidence amply supports the finding of the trial court that plaintiff was the procuring cause of defendant's sale of her business, that it was she who stimulated the buyer's interest while the second broker did little more than convey a lower offer which plaintiff was never authorized to receive, that plaintiff did not abandon her efforts to bring defendant and the ultimate buyer together on mutually satisfactory terms, and that defendant did not remain neutral between the competing brokers.

Defendant also assigns as error a ruling of the trial court in permitting the attorney for Mr. Creel, the buyer, to recite the fact that he had talked with plaintiff and also with Mr. Creel regarding plaintiff's continued efforts to sell the property. We are clear that such ruling was correct. As a matter of fact this ruling was more favorable to defendant than he was entitled to, for the trial court granted a motion to strike testimony given by the same witness regarding his conversations with plaintiff and with Mr. Creel. The testimony of this witness was that after the joint conference Mr. Creel had told him that he was still going to try to buy the property and believed he could get a better price by dealing directly with defendant and was going to follow that course. The evidence of such conversations clearly was admissible.[2]

No error appearing, the judgment of the trial court is

Affirmed.

[2] Lucas v. Hamilton Realty Corp., 70 App.D.C. 277, 105 F.2d 800.