**HOG HEAVEN CORPORATION, Plaintiff-Appellant,**

v.

**MIDLAND FARM MANAGEMENT COMPANY, Defendant-Appellee.**

No. 85–217.

Court of Appeals of Iowa.

Nov. 26, 1985.

James W. Hall, of Hall & Irvine, Cedar Rapids, and Lorraine K. Snead, of Lane & Snead, Cedar Rapids, for plaintiff-appellant.

James F. Pickens, of Pickens, Barnes & Abernathy, Cedar Rapids, and James L. Wagner, of Gartelos, Wagner & Mattson, Waterloo, for defendant-appellee.

Considered by DONIELSON, P.J., and HAYDEN and SACKETT, JJ.

DONIELSON, Presiding Judge.

The plaintiff corporation, Hog Heaven, brought a suit alleging breach of contract. The contract was signed by Hog Heaven's promoter and incorporator, acting as the president of Hog Heaven; however, at the time the contract was signed, Hog Heaven's articles of incorporation had not yet been filed.

The defendant was granted a summary judgment on the ground Hog Heaven lacked capacity to enforce the contract because Hog Heaven did not yet exist as a corporation at the time the contract was executed. Hog Heaven has appealed from the summary judgment, contending it can enforce the contract because it ratified the contract by its conduct after it came into existence.

, The plaintiff, Hog Heaven Corporation, is a corporation whose promoter and incorporator was Richard Bice. On October 10, 1980, Bice, acting as the president of Hog Heaven, signed a written farm management contract with the defendant Midland. At the time this contract was executed, Hog Heaven's articles of incorporation were signed but had not yet been filed. The articles of incorporation were filed on March 9, 1981, even though they were signed on September 9, 1980.

In January of 1984, Hog Heaven brought the present suit against Midland, alleging breach of the farm management contract. Midland moved for summary judgment, alleging that Hog Heaven lacked the capacity to enforce the contract because Hog Heaven's articles of incorporation had not yet been filed at the time the contract was executed. The district court granted Midland a summary judgment, and Hog Heaven has appealed.

Hog Heaven contends that, under the circumstances of this case, it may sue upon a contract made before its articles of incorporation had been filed. Hog Heaven asserts that a corporation can be party to a contract made by its promoters before the corporate existence begins if the contract is ratified by the corporation once the corporation exists. Hog Heaven asserts that

such a corporate ratification took place in this case because Hog Heaven, once it existed, "accepted the benefits and the burdens" of the farm management contract signed by incorporator Bice.

This case presents an issue of first impression for Iowa: Can a corporation enforce a contract entered into by a promoter on behalf of the corporation if the corporation did not exist at the time the agreement was reached?

Hog Heaven cites Iowa authority which resolves the issue of contracts entered into between a promoter and a third party before incorporation, and subsequently the promoter and corporation are *sued* by the third party. *See, e.g., Moody v. Bogue,* 310 N.W.2d 655 (Iowa Ct.App.1981). Iowa law provides that under such circumstances a corporation and its promoter can be sued but does not discuss whether the corporation can sue to enforce the agreement. *See* 310 N.W.2d at 661.

Midland cites authority which is inapplicable because those cases involve situations where a corporation exists and a contract is entered into *after,* not *before,* the corporation has already been formed. *See Hearth Corporation v. C–B–R Development Co., Inc.,* 210 N.W.2d 632 (Iowa 1973); *Adam v. Mt. Pleasant Bank & Trust Co.,* 355 N.W.2d 868 (Iowa 1984). Our situation does not involve an existing corporation whose corporate status was canceled or had expired.

Authority from other jurisdictions does address enforcement of contracts by corporations prior to their existence. The majority view provides a corporation can either sue or be sued on a contract it adopts which was entered into before the corporation existed.

It is generally held that a corporation which, after coming into legal existence, has adopted a contract made for the corporation by its promoters, may sue upon the contract to enforce it or to recover for its breach. Thus, it is held that a corporation may maintain suit on stock subscriptions procured by promoters be-

fore its organization. In a few cases, however, the right of the corporation to sue in its own name on its promoters' contracts has been denied, although these have been principally cases from jurisdictions taking the position that contracts made by promoters with third persons cannot be adopted by the corporation after its creation.

18 Am.Jur.2d *Corporations* § 126 (1965).

This issue was articulately addressed some time ago by the Kentucky Supreme Court, which stated:

The case turns on the right of a corporation to sue upon a contract made on its behalf by one of its promoters before it was organized. In 1 Thompson on Corporations, § 113, the rule is thus stated: "The weight of authority is very clear on the question of the power of a corporation to adopt a contract of the promoters. The power is conceded, and the effect of the adoption is said to be to make the contract that of the corporation. This power of the corporation to adopt a contract must necessarily be understood to be limited to such contracts as the corporation itself, after its organization, would be authorized to make." To the same effect, see 7 R.C.L. p. 82, § 62; 14 C.J. p. 259, § 290; *Stanton v. New York & E.R. Co.*, 59 Conn. 272, 21 Am.St.Rep. 110, 22 Atl. 300, and cases cited.

While there is some conflict of authority on the question, and while in the cases the question has arisen oftener on the corporation's liability on the contract than on its right to enforce the contract, upon both principle and the weight of authority the corporation may sue upon the contract made by its promoters for it, when it has adopted the contract.... The contract, though made in the name of [the promoter] was, as all the parties knew, made in his name for the benefit of the corporation to be organized. He was one of the promoters, and had no intention of buying the machinery for himself. The other promoters, knowing all the facts, recognized this, and so the corporation, when organized, at once took charge of the plant which had been bought for it, and gave [the promoter] stock to the amount of his expenditures. Though there was no formal assignment of the contract to it, its acts were an adoption of the contract no less than a formal resolution to this effect, spread upon its record, would have been. It was the only person having any real interest in the due performance of the contract, and is the proper party to recover for its breach. To hold otherwise would be to leave a wrong without a remedy.

*Builders' Duntile Co. v. W.E. Dunn Manufacturing Co.*, 229 Ky. 569, 571–72, 17 S.W.2d 715, 716 (1929). *See also* Annot., 66 A.L.R. 1423 (1930).

In addition, the Indiana Supreme Court has provided:

It is true that in the present case, the Grasshoff Realty Corporation was not in existence at the time of the preliminary negotiations. However, it is well settled that,

"If, after it comes into existence, a corporation expressly or impliedly ratifies a contract made for its benefit by its organizers before it was formed, such contract becomes the contract of the corporation and it is entitled to the benefits thereof and is liable thereon." [Cases cited.] *Boatright v. Steinite Radio Corp.* (10 Cir.1931), 46 F.2d 385, at 388.

This court has held in the case of *Smith v. Parker* (1897), 148 Ind. 127, 134, 45 N.E. 770, that a promoter's contract made on behalf of a corporation to be formed became the contract of the corporation when subsequently approved by it and afterwards the promoter-stockholder has no standing to sue. This court said:

"The second paragraph sufficiently shows that the new corporation had knowingly received some of the benefits of said contract. And therefore it sufficiently appears that the new corporation had accepted and adopted the contract sued on, and, as that contract

is the obligation of the defendant to the new corporation, and to nobody else, the question arises whether the appellant, though a stockholder in the new corporation, has any right of action for a breach of that contract; or, in other words, does a breach of that contract make a cause of action in his favor against the defendant? That question has been answered in the negative by this court in *Tomlinson v. Bricklayers' Union, [etc.]* 87 Ind. 308. It was there held that a cause of action in favor of a private corporation could not constitute a cause of action in favor of one of its stockholders. * * * "

The authorities are uniform that a contract of a corporation, or a contract made by the promoters and subsequently adopted by the corporation can be enforced only through an action brought by the corporation. See 18 C.J.S. Corporations § 133, and 6 West's I.L.E. Corporations § 131.

*Speedway Realty Co. v. Grasshoff Realty Co.*, 248 Ind. 6, 9–10, 216 N.E.2d 845, 846–47 (1966).

Furthermore, the Superior Court of New Jersey has held on this same issue:

> The fact is that there *were* two parties to this contract at the time of its execution. The agreement was signed on behalf of the buyer by the purported president of the embryonic or proposed corporation. As such he was a "promoter." Whether or not the corporation were later to "adopt" the contract, a promoter could be held liable thereon. See Note, "Promoters' Contracts: A Statutory Solution," 15 Rutg.L.Rev. 566, 573 (1961); 1 Fletcher, Cyclopedia of Corporations, § 215. Thus, defendant was not without a fellow contracting party against whom it could have enforced the agreement.
>
> In the context of a promoter having executed the contract, the corporation later coming into existence, the corporation is entitled to all the rights thereunder as well as assuming full liability therefor.

1 Fletcher, *op. cit.*, § 214 at 836–837. Even though the embryo corporation was not able to contract, yet it could adopt a contract made for its benefit. *Ibid.*, §§ 207, 208. Having adopted the contract, the corporation may then sue for its enforcement. *Cf.* African Methodist Episcopal Church v. Conover, 27 N.J.Eq. 157 (Ch.1876); *Builders' Duntile Co. v. W.E. Dunn Mfg. Co.*, 229 Ky. 569, 17 S.W.2d 715 (Ct.App.1928), 1 Fletcher, *op. cit.*, § 214; 2 Williston on Contracts (3d ed.), § 306 at 431, n. 18. One mode of adopting the contract is the institution of suit thereon by the corporation. Note, 15 Rutg.L.Rev. 566, at 572. Among the remedies available on such a suit is specific performance. 1 Fletcher, *op.cit.*, § 214 at 838, n. 46.

*K & J Clayton Holding Corp. v. Keuffel & Esser Co.*, 113 N.J.Super. 50, 53–54, 272 A.2d 565, 566–67 (1971).

Finally, the Tennessee Supreme Court adopted the authority provided in *Moore v. Dallas Post Card Co.*, 215 S.W.2d 398 (Tex.Civ.App.1948) which found:

> Under the rule that one may sue upon a contract made for his benefit, a corporation may sue to enforce or recover damages for breach of a preorganization contract. And it would seen that the act of suing upon the contract is of itself an adoption of the contract, precluding any objection that the corporation may not sue upon it. What has been done by the promoters in furtherance of the transaction inures for the benefit of the corporation when formed.

*Windsor Hosiery Mills, Inc. v. Haren*, 220 Tenn. 6, 9, 413 S.W.2d 676, 677 (1967).

We find no policy in Iowa that prevents us from adhering to the majority view which allows a corporation to adopt a contract entered into by its promoter and thereafter sue to enforce such agreement. Even though under strict contract theory Hog Heaven did not exist in October of 1980 which would preclude it from being a party, we believe the better view is that a

corporation can sue under such circumstances.

Iowa authority does provide that a corporation can be sued for preincorporation agreements. A logical extension of that policy is that if a corporation accepts the burdens of a contract such that it can be sued on the agreement, it should similarly be able to accept the benefits of such an agreement and sue for its breach. Because this case reaches us by summary judgment, we reverse and remand for findings consistent with this opinion. We express no opinion as to whether Hog Heaven adopted or ratified the contract entered into by Midland and Bice.

REVERSED AND REMANDED.