AFRICAN METHODIST EPISCOPAL CHURCH *vs.* CONOVER.

1. There must be a person, either natural or artificial, *in esse*, to receive a conveyance of an immediate estate in land..

2. An unincorporated association or community is not competent to purchase, or to take title to land by deed. Capacity to take title must exist before a valid conveyance can be made.

3. Where a purchase is made by several persons representing a voluntary association of christians, for the common benefit of all the persons composing the association, and the purchase money is paid, and possession of the land given, equity raises a promise by the vendor to make a title, either to the persons making the payment, or to the corporation, if one be created.

4. In such case, the vendor, as to the title, becomes a trustee for the purchasers; and they being the mere agents of the voluntary association, the moment the association is incorporated, it has a right to a conveyance from the vendor.

5. Where, after a purchase of lands by a voluntary association, and after the registry of their deed, but before the incorporation of the association, a judgment is recovered against the vendor, any rights acquired under the judgment and levy are subject to the trust in favor of the association, and the judgment creditor will be perpetually enjoined from accepting a deed, or attempting to sell by virtue of his judgment.

6. Ordinarily, an injunction cannot be granted under a prayer for general relief; it must be the subject of a special prayer. But the bill may be so amended.

In September, 1867, Johnson Van Cleef, George Locker and William Patterson, representing a voluntary association of christians, purchased and paid for an acre of land, at Pine Brook, Atlantic township, Monmouth county, with a view of erecting thereon a house of worship. Possession was taken of the land at once, and a church edifice, costing between $400 and $500, erected thereon. On the 27th of September, 1867, a deed was made by the vendor, Lucius W. Fish, to the African M. E. Church of Atlantic township, which was recorded December 3d, 1867. More than six years after the registry of the deed, the defendant recovered a judgment, in the Monmouth County Common Pleas, against the grantor, Fish, and by virtue of an *alias fi. fa.* issued on it December 23d, 1874, the land was seized and sold by the sheriff to the defendant, May 28th, 1875. It does not appear the sale has been carried into effect by the delivery of a deed. The complainants were incorporated May 19th, 1875. The corporation represents the voluntary association for whose benefit the land was purchased. The bill was filed June 11th, 1875, to set aside the sheriff's sale, and to have it declared that the title to the land is in the complainants, and for general relief. The cause was heard upon bill, answer and proofs.

*Mr. James Steen,* for complainants.

*Mr. Robert Allen, Jr.,* for defendant.

THE VICE-CHANCELLOR.

There must be a person, either natural or artificial, *in esse,* to receive a conveyance of an immediate estate in land. An unincorporated association or community is not competent to purchase, or to take title to land by deed. Capacity to take title must exist before a valid conveyance can be made. 2 *Washb. on Real Property* 566, ¶ 32; *Robie* v. *Sedgwick,* 35 *Barb. Sup. Ct.* 328; 2 *Sugden on Vend.* 883, *marg'l; Jackson* v. *Cory,* 8 *Johns.* 387; *Hornbeck* v. *Westbrook,* 9 *Johns.* 74; *Com. Dig., Capacity, B.* 1.

It is clear the court cannot declare that the complainants hold the legal title to the land in controversy, but it does not follow they must be turned away without relief.

The defendant stands in the rights of the grantor of these lands. He has no new or independent equity. The lands had been paid for, under a contract of purchase, more than six years before he recovered judgment; for all that time they were in the possession of a voluntary association of persons, now represented by the corporation, and were used for purposes which gave notice to the world they were not held in individual proprietorship, or for purposes of gain or business. It requires no argument to show that the lowest notions of justice would not tolerate a claim by the vendor to the possession of these lands, against those whose money he had received in payment for them. The defendant's position is not a whit stronger.

There can be no doubt there was a contract of sale. The purchase money was paid and possession given. It was not a contract with the corporation, for it did not exist, but there were natural persons. The negotiation was with them, or with one or more of them, representing the others, and their money paid for the lands. When the purchase money was paid and possession given, equity raised a promise by the vendor to make a title, either to the person making the payment or to the corporation when created. The purchase was made for the common benefit of all the persons composing the voluntary association, and when they were transformed, by due form of law, from a mere voluntary assembly into a body corporate, the corporation, as to these lands, took the place of the individual members, and, although the vendor had already made a deed to the corporate name, if he had been requested to execute another at the expense of the corporation, and refused, equity would have compelled him to do so, because such act, on his part, was necessary to give legal effect to the intention of the parties. Contracts made by the promoters of a projected corporation, before incorporation, on behalf of themselves and others engaged in the same enterprise, have

been repeatedly enforced, specifically, in England against the corporation. *Fry on Spec. Perf.* 61, *marg'l; Edwards* v. *Grand Junction Railway Co.,* 1 *Myl. & Cr.* 650 ; *Greenhalgh* v. *Manchester and Birmingham Railway Co.,* 3 *Myl. & Cr.* 792. Where the owner of land dedicated a lot to the use of a voluntary association of christians known as Lutherans, and they entered into possession of it, on a bill filed by certain persons describing themselves as trustees and agents of the association, against the heir-at-law of the donor, to restrain him from disputing their title and disturbing their possession, it was held the complainants could maintain the action in the character they set up, and a perpetual injunction was decreed. *Beatty* v. *Kurtz,* 2 *Pet.* 578. Judge Story, in speaking of their right to sue, says : " The only difficulty is, whether the plaintiffs have shown in themselves a sufficient authority, since it is not evidenced by any formal vote or writing. If it were necessary to decide the case on this point, we should incline to think that, under all the circumstances, it might be fairly presumed. But it is not necessary to decide the case on this point, because we think it one of those cases in which certain persons belonging to a voluntary society, and having a common interest, may sue in behalf of themselves and others having a like interest, as part of the same society, for purposes common to all, and beneficial to all." In the same case, the doctrine laid down in the *Town of Pawlet* v. *Clarke,* 9 *Cranch.* 331, that in cases of an appropriation or dedication of land to religious uses, the existence of a competent grantee was not necessary, but they would be supported on the ground that a trust was created, was expressly affirmed.

Upon well-established principles, then, I think it is entirely clear, that on the payment of the purchase money and the transfer of the possession of these lands, Fish, as to the title, became a trustee for the persons who made the contract of purchase and paid the purchase money. He held the legal title in trust for them. The purchasers were the mere agents of the voluntary association, and when the association became a legal entity, capable of acquiring land, it succeeded to the

rights held by the individual members for the common benefit of all the members of the association. The moment the association had life and capacity, it had a right to a conveyance from Fish.

It is a familiar rule, that if a person purchase land, knowing that another has a prior contract for its conveyance to him, the second purchaser stands, in equity, in no stronger position than the original owner, and if he takes title, the first purchaser may compel him to convey to him. *Story's Eq. Jur.*, §§ 788, 789 ; *Champion* v. *Brown*, 6 *Johns. Ch.* 398 ; *Haughwout* v. *Murphy*, 7 *C. E. Green* 546.

The possession of these lands by the association, the registry of the deed, and the presence of the church edifice on them, put the question of notice in this case out of the field of debate.

I therefore hold, at the time the defendant recovered his judgment, Fish held these lands in trust for the members of the association, and that when the complainants acquired corporate functions they succeeded to the rights of the individual members of the association in these lands, and that any rights the defendant acquired by his judgment and levy were subject to the trust in favor of the association.

The remaining question is, what relief must be given ? It is a duty peculiar to courts of equity, to protect the beneficiaries of a trust, as well against the misconduct of the trustee as the claims of his creditors. Where the legal title to land is held by the husband, for the benefit of his wife, upon a trust not expressed in writing, and the land is liable to seizure and sale under a judgment against the husband, equity will enjoin the judgment creditor from making sale of the land. *Lathrop* v. *Gilbert*, 2 *Stockt.* 345. The bill in this case does not ask for an injunction. Under its present frame, it may be questioned whether an injunction can properly issue. Ordinarily, an injunction cannot be granted under a prayer for general relief, but must be the subject of a special prayer. 1 *Hoffman's Ch. Pr.* 77 ; 1 *Daniell's Ch. Pr.* 388. But this omission is a formal matter, and cannot be permitted to defeat justice. *Del. and Rar. Canal Co.* v. *Rar. and Del. Bay R. R.*

*Co.*, 1 *C. E. Green* 379. The bill must be amended so as to embrace a prayer for a perpetual injunction, restraining the defendant from receiving or accepting a deed for these lands, also from attempting to sell them by virtue of his judgment, and from doing any act which will disturb the possession of the complainants.

When the bill is thus amended-a perpetual injunction will be decreed against the defendant, with costs.