**MACY CORPORATION, Plaintiff, v. RAMEY, Defendant.**

Common Pleas Court, Franklin County.

No. 192435. Decided January 14, 1957.

Gumble & Hofheimer, for plaintiff.
John R. Schickler, for defendant.

## OPINION

By BARTLETT, J.

### DECREE OF SPECIFIC PERFORMANCE DENIED.

This is an action for specific performance, to require the defendant, Lucy D. Ramey, to convey to the plaintiff corporation by warranty deed, 48.44 acres of land located at the northwest corner of East Broad Street and the Reynoldsburg-New Albany Road in Franklin County, Ohio.

On February 4, 1955, there was presented in writing to Robert S. Dingledine Company, a licensed real estate broker, an offer to purchase through said broker the 48.44 acres above referred to, for the sum of $65,000.00, payable $19,000.00 cash, balance payable $5000.00 on or before March 1, 1957, $5000.00 on or before March 1, 1958, $5000.00 on or before March 1, 1959, and all due on or before March 1, 1960, interest at 5% per annum, payable semi-annually in addition to the payments aforesaid, and all deferred payments to be secured by notes and first mortgage on said real estate, said mortgage to provide for release of land therefrom on payment of additional cash over and above as provided above of $22.50 per front foot on Broad Street frontage and extending to the north line of said land, etc.

The foregoing offer was signed as follows:

|  |  |
|---|---|
| : Received of Bernard Ruben : | "Macy Corporation |
| : "$500 on above agency : | By B. Rubin, Pres. |
| : contract 2/4 1955 : | Macy T. Block." |
| : Robert S. Dingledine Co. : | |
| : By Jim Lamp." : | |
| : : | |

The offer provided further "In consideration of your services, this proposal is in effect to and including February 14, 1955.

"I hereby deposit with your firm $500 as a consideration for this contract, to be held in trust by you until this proposition or any modification thereof is accepted and conditions fulfilled. * * * If I fail to fulfill within 30 days after expiration of said ten days above mentioned my part of this contract I agree to pay your firm your regular commission, etc."

The Dingledine Company on February 9, 1955, presented the above offer to the defendant Lucy D. Ramey and her now deceased husband, Dr. Ralph E. Ramey, who signed an acceptance of the foregoing proposition by the Macy Corporation, agreeing to pay the Dingledine Co. its regular commission, "If I fail to fulfill within 30 days after the expiration of said ten days above mentioned my part of this contract."
on the following conditions:

"We accept this contract (both sides of paper) provided, if releases

are request for 200 ft. by 200 ft. out of south East corner amount to be paid an additional $10,000.00 for said release." At the right of this condition was placed the initials "BR" which it was testified indicated said condition was approved by said Bernard Ruben.

On February 4, 1955, a $500.00 check was deposited with the Dinglecine Co. Due to disputes over the contract, Bernard Ruben stopped payment of the $500.00 check. It is claimed by Mr. Ruben that a new check for $500 was substituted, but Mrs. Ramey denies any knowledge as to the new check.

On April 20, 1955, the defendants, Lucy D. Ramey, and her late husband, advised by letter that they would not perform their part of the alleged agreement. This letter was mailed to "Macy Corporation, Cr Bernard R. Ruben," and copies were mailed to Ruben and Macy T. Block.

It is averred in the amended petition that after receiving the letter of repudiation aforesaid, "Nevertheless, on April 20, 1955, and again on April 27, 1955, plaintiff notified the defendants that it was ready, willing and able to proceed according to the terms of the aforesaid agreement, but the defendants then and ever since have refused to execute and deliver a good and sufficient warranty deed for said premises."

The Articles of Incorporation for said plaintiff corporation were not filed until April 26, 1955, as stated in the amended petition.

It was admitted by plaintiff's witnesses at the trial that the plaintiff corporation was not in existence at the time of the alleged offer of February 4, 1955, was made to the Rameys. It was admitted that "B. Ruben never was President of the Macy Corporation," and it was further admitted that the name of "Macy T. Block" was added to said offer after the Rameys had made their qualified acceptance of said offer by the fictitious corporation.

Mrs. Ramey testified that she was led to believe and did believe she and her husband were dealing with a large corporation with plenty of money back of it. This lawsuit was filed May 10, 1955.

The Court is constrained to believe the testimony of Mrs. Ramey that she was led to believe that she and her husband were dealing with an existing company and this is supported by the signing of the offer of February 4, 1955, as "Macy Corporation, By B. Ruben, Pres." This was a false pretense, since there was no such corporation in existence at the time.

"Mutual consent is essential to every agreement and agreement is essential to every contract. There can be no binding contract where there is no real consent and it is no agreement where one party enters into the contract under a mistake as to the identity of the other party as where one party accepted an offer meant for another." **Feldman v. Roth, 12 Abs 121;** Anson Law of Contract, American Edition, by Huffcut:

"Mistake as to identity of the person with whom the contract is made." Sec. 184, p. 168.

"In many cases it is said, * * * that the promoter is the agent of the corporation. But this is hardly true, at least until the corporation is actually organized, because until then no principal would be in existence, and the corporation would not be bound by contracts made before its

existence." **10 O. Jur. Corporations, Sec. 120, p. 193; 18 L. R. A. (n. s.) 1106; 10 O. Jur. Corporations, Sec. 130, p. 207.**

"Attempt of promoter to bind corporation that is not in existence is contrary to public policy." **Odenkirk v. Vretman et al., 7 Abs 623.**

On page 630 of his opinion in the preceding case, P. J. Vickery, speaking for the Court of Appeals of the 8th District, says:

"These two men were not to pay any Ten Thousand Dollars. * * * They were simply and merely the 'go-between' to provide a corporation that would enter into such agreement. * * *

"The difficulty surrounding the situation is that such a contract could not be made that would be binding upon anybody. How could two men make a contract that would bind a corporation which must have at least five directors in Ohio? Even if the two men owned all the stock except the qualifying shares for the directors, the directors could turn down and refuse to make such a contract, and the attempt to bind a corporation that was not in existence in my judgment is contrary to public policy and ought not to be tolerated and, in my view, the courts do not tolerate such contracts.

"Now, inasmuch as there was no liability shown against these two defendants, nor was any liability intended to be assumed by them other than to provide a corporation, it amounted simply to an option which if performed would have ripened into a contract."

There is no showing of liability on the part of the promoters as there is no promise on their part to pay or guarantee that the corporation to be will pay. Anderson v. Shepard, Inc. et al, No. 186,732, dockets of this court.

"There were lacking two contracting parties necessary to the execution of a valid contract."

**Banking and Trust Co. v. Realty Co., 37 Oh Ap 566, 569,** citing with approval, **In re Exchange Bank of Stryker, 26 Oh Ap 142;** and see, **11 O. Jur. (2d), Contracts, Sec. 13, p. 259.**

"The defendant signed a written instrument previous to the incorporation of the plaintiff, and bound himself to make the turnpike, known as the Dayton, Watervleit and Xenia Turnpike Road across his farm at the engineer's estimate provided it crossed in a specified direction, or if he could not make it, to 'pay for it at the same rate, and take the same in stock in said road, and have it ready by the time the rest of the road is ready for travel.' The company when afterward incorporated, located the road across the farm of the defendant, in the direction specified in the instrument, and then built the road across the farm of the defendant, and tendered stock to the amount of the engineer's estimate for the defendant, and demanded payment. Held, that the contract was not binding on the defendant for want of mutuality." **Dayton, etc. Turnpike Co. v. Coy, 13 Oh St 84.**

On page 95 of his opinion in the foregoing case Gholson, J. says·

"We have been asked by the counsel for the plaintiff, if we found there was no mutuality in the contract, still, to look at the conduct of the defendant—his purpose in the execution of the instrument. But we do not see how we can look at the conduct of the defendant with any

other view, than to ascertain whether he has entered into a contract. In such a case as this, it is not our province to decide as to the propriety of the conduct of the party. We have only to inquire whether he has incurred a legal obligation, and being of opinion for the reasons which have been stated, that he has not, the judgment of the court of common pleas will be affirmed."

"It is well established that specific performance will not be decreed where the remedy is not mutual." Tyson et al. v. Miller-Tyson Co. et al., 15 C. C. (n. s.) 177, 183.

"This principle is clearly stated in the syllabus of Cooper v. Penna, 21 Cal. 403 in the language following:

" 'Equity will not enforce the specific performance of a contract where the party asking the enforcement can not from the nature of the contract be compelled to perform it specifically on his part. In order that a specific performance of a contract may be compelled, the remedy, as well as the obligation, must be mutual, and as a general rule the question of mutuality is to be determined by the contract itself and is not affected by circumstances arising after the contract is made and the rights of the parties fixed.' "

"Necessity of Binding Contract.—Since specific performance is an equitable remedy, available under certain circumstances to protect rights under contracts, it is necessary in every case that there be a contract to be enforced. In the absence of a contract, the remedy is unavailable. It is not the province of the court to make contracts, but to enforce them. The contract must be valid and binding. A contract invalid in law will not be enforced by a court of equity against a party equal in merits and in equity. One of the prerequisites of an instrument necessary to warrant its enforcement is that the contract be, in its nature and circumstances, unobjectionable in any of its features. As a matter of fact, many of the cases in which an appeal is made to the equitable powers of the chancery courts to enforce contracts do not turn upon the special rules regulating the exercise of those powers, but on the underlying and fundamental question as to **the existence or nonexistence of a valid contract**, although the mere existence of a legal contract may not be sufficient to call forth the equitable interference of chancery. Many reasons which turn on the invalidity of the contract itself are available as defenses to bills in equity for specific performance. Thus, it may be shown that there was no meeting of the minds of the parties, or that there was no mutual consent or obligation, or that the agreement was not entered into by the defendant or by another for the defendant." (Emphasis ours.) **37 O. Jur. Specific Performance, Sec. 12, p. 18.**

In the case of **Bretz et al. v. The Union Central Life Insurance Co., 134 Oh St 171,** the action was for specific performance, in a **per curiam** opinion, the Supreme Court of Ohio on **page 174,** stated:

"The question here presented, the answer to which is controlling, is whether an unaccepted, continuing offer to enter into a unilateral contract is revocable before the expiration of the time limit therein fixed.

"Appellant's proposal was to the effect that it would accept an amount of money less than that due on its mortgage against appellees'

property 'if' payment were made 'within ninety days of the date of this commitment.' This proposal constituted a conditional, continuing offer to enter into a unilateral contract with appellees. * * *

"There was here no exchange of promises or payment of any consideration. The promise was unilateral and unsupported by any consideration. Had it been accepted, the contract resulting would have been unilateral. By the offer, no obligation was imposed upon appellees, but only a condition, the performance of which was entirely optional with the appellees. Standing unaccepted, the offer was but a unilateral promise, lacking in consideration and in mutuality, and binding neither upon appellant nor appellees. The one could revoke without consequent liability and the other could refuse to perform the condition imposed without liability ensuing. Neither was bound to the other, and until the offer was accepted, either could withdraw from the arrangement.

"An offer, continuing or otherwise, to enter into a unilateral contract, unsupported by a valuable consideration, is not binding upon the offeror, and is revocable at his will at any time prior to its acceptance. Though time for acceptance was prescribed, there was no obligation upon appellant to keep the offer open for the remainder of the period, and the right to revoke it before its expiration, if not accepted, is clear.

" 'An offer, not supported by a consideration, may be revoked before acceptance, even though it expressly gives an offeree a definite time within which to accept.' William Weisman Realty Co. v. Cohen, 157 Minn., 161, 195 N. W., 898. See also 1 Williston on Contracts (Revised Ed.), 156, Section 55; 12 American Jurisprudence, 528, Section 32.

"Acceptance of an offer to enter into a unilateral contract can be effected only by performance of the condition prescribed and within the time fixed. This means substantial performance and not merely steps taken preparatory to performance. Acts preparatory to performance tender neither consideration nor acceptance, no matter how extensive the preparation or how large the expense involved may be. Nothing less than performance will tender acceptance, and until such time the right to revoke remains unimpaired. See 1 Page Supplement on Contracts, 92, Section 192; Stensgaard v. Smith, 36 Minn., 181, 44 N. W., 669; Hollister v. Frellsen, 148 Miss., 568, 114 So., 385; Levin v. Dietz, 194 N. Y., 376, 87 N. E., 454; Petterson, Exrx., v. Pattberg, 248 N. Y., 86, 161 N. E., 428; Kolb v. J. E. Bennett Land Co., 74 Miss., 567, 21 So., 233; Restatement of the Law of Contracts, 53, Section 45, Comment a."

"'* * *

"In the instant case, the survey made, the abstract prepared and expenses incurred by appellees were but acts preparatory to performance and in no sense constituted fulfillment, substantially or otherwise, of the condition imposed by the offer. The performance required under appellant's offer was the payment of $8,100 within ninety days from the date of the proposal. No such payment was either made or tendered within the time prescribed. There was no performance of any kind, and hence no acceptance. (See **Campbell v. Hicks, 19 Oh St 433.**) **The withdrawal of the offer was made before the promise therein contained became binding. Where there is no binding promise, there can be no**

contract. For an action in specific performance to be maintainable, there must be a contract (37 O. Jur. 18, Section 12), valid and mutually binding upon both parties thereto. Steinau v. Cincinnati Gas-Light & Coke Co., 48 Oh St 324, 27 N. E., 545.

"A court will not decree specific performance of a contract having no existence. 'Courts will compel parties to perform contracts in accordance with their terms, but they have no power to and will not make contracts for persons and compel the execution of them.' Spengler v. Sonnenberg, 88 Oh St 192, at 203, 102 N. E., 737, 52 L. R. A. (N. S.), 510, Ann. Cas. 1914D, 1083.

"Appellees argue that appellant's refusal to abide by its proposal occasioned delay, making it impossible for them to tender payment within the ninety-day period prescribed in the offer. However, it is one thing for a party wrongfully to prevent performance of a contract to which and by which he is bound and another thing for a party to revoke his offer to which he is not bound. If revocation of an offer before acceptance is at all an exercise of a legal right, it is of no moment that the effect of revocation is to make acceptance by the offeree impossible. The question in such case is whether the right to revoke exists. If it does, then liability will not further its exercise." (Emphasis added.)

The Supreme Court of Ohio denied specific performance to the offeree in the Bretz case, supra, since the offer to accept an amount of money less than due was unsupported by consideration, and was not binding and was revocable prior to acceptance; and since the offer was revoked before acceptance, there was no valid contract to be enforced.

In the instant case there was no valid contract with the so-called "Macy Corporation" prior to its creation, since the transaction lacked the necessity of two parties to the execution of a contract. 11 O. Jur. Contracts, Sec. 13, p. 259.

There was at no time a contract with B. Ruben and Macy T. Block since they never made any promise that was binding on them, and moreover, the Rameys at all times believed they were making a contract with "Macy Corporation."

The utmost that can be claimed for the proposal of the Rameys was that they would accept a certain amount of money for their land. Their promise was unilateral and unsupported by any consideration. By their offer, no obligation was imposed upon nonexistent Macy Corporation nor anyone else, but only a condition, the performance of which was entirely optional with the Macy Corporation when it came into existence. Standing unaccepted, their offer was but a unilateral promise, lacking in consideration and in mutuality, and binding neither upon the Rameys nor the Macy Corporation when it came into existence. The Rameys could revoke without consequent liability and the Macy Corporation when created could refuse to perform the conditions imposed without any liability ensuing. Neither was bound to the other, and until the offer of the Rameys was accepted, either could withdraw from the proposed arrangement.

The offer of the Rameys to accept a certain amount of money for their land was withdrawn or revoked, April 20, 1955, by a written notice to the Macy Corporation in care of Bernard Ruben and copies were

mailed to Bernard R. Ruben and Macy T. Block. The petition admits receipt of these notices.

Notwithstanding, the Articles of Incorporation of the Macy Corporation was filed on April 26, 1955, and on said date the Macy Corporation first came into existence; thereafter, said corporation on April 27, 1955, undertook to "ratify, approve and adopt the acts of Bernard R. Ruben and Macy T. Block," and on said date notified the Rameys it was ready, willing and able to proceed with the fulfillment of the alleged purchase of the Ramey's land.

The Court finds that the Rameys had withdrawn from the arrangement and had so notified Mr. Ruben, Mr. Block and their embryo corporation, at least one week before the corporation came to life and made its attempt to accept the promise of the Rameys to sell their land at a certain price. Consequently, the acceptance was too late to effect a contract between the Rameys and the Macy Corporation.

"Where a contract has been procured by overreaching on the plaintiff's part, or where it has been artfully contrived as a snare to bind the defendant in a manner which he did not comprehend at the time he became a party to it, the agreement will not be enforced by a court of equity." 37 O. Jur. Specific Performance, Sec. 65, p. 86.

"One who asks specific performance of a contract in the procurement of which he has practised deceit is always an unwelcome suitor in a court of equity and will generally be denied relief. Misrepresentation leading to the execution of a contract is likewise a ground for the refusal of a court of equity to grant specific performance." 37 O. Jur. Specific Performance, Sec. 67, p. 87.

The maxim, "He who comes into equity must come with clean hands," as a basis for the refusal of specific performance or other equitable relief, is as old as the equity courts themselves. 4 A. L. R. 70.

This transaction with the Rameys was conceived in deceit and misrepresentation. They were wilfully deceived into believing they were dealing with the "Macy Corporation" when there was no such entity; they were led to believe "B. Ruben was its president," and he never was; there was deceit practised in the adding of the name of "Macy T. Block" to the offer after it was accepted by the Rameys; and finally, on April 20, 1955, the Rameys were notified the Macy Corporation was ready, willing and able to proceed with arrangement to buy the land of the Rameys, when in truth and fact the corporation had not yet come into existence.

The mere technicality of incorporation does not so change the character of the operating forces which created it, when the directing minds continued to be the same after as before incorporation. 17 A. L. R. 452. Such a delusion would facilitate the using of the corporate fiction of an entity as an instrument of fraud and injustice to the unwary. I Fletcher Cyclopedia, Corporations, p. 687, f. n. 66.

When the attorney, Fred Place, showed lack of interest in furnishing title insurance for this transaction, and said he had no desire to work on a "dead horse," he, no doubt, sensed the stench of the Augean stables.

The deceit and misrepresentations in this case cannot be justified.

"A party appealing to a Court of Equity must make a case which can

commend itself to the conscience of the court." **Kellogg v. Eby, 15 Oh St 64, 66; Snyder v. City of Alliance, 41 Oh Ap 48, 52.**

"A mere legal right in the plaintiff will not move the chancellor." **Parsons v. Ohio Pail Co., 6 C. C. (n. s.) 116, 120, affirmed 74 Oh St 464,** without opinion.

The decree for specific performance will be denied. Entry accordingly with exceptions by counsel for the plaintiff.