113 N.J. Super. 50 (1971)
272 A.2d 565
K & J CLAYTON HOLDING CORP., A NEW YORK CORPORATION, PLAINTIFF,
v.
KEUFFEL & ESSER COMPANY, A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided January 6, 1971.
*51 Mr. H. Lee Sarokin for plaintiff (Messrs. Lasser, Lasser, Sarokin & Hochman, attorneys).
Mr. Clyde M. Noll for defendant (Messrs. Bourne and Noll, attorneys).
LYNCH, J.S.C.
Plaintiff K. & J. Clayton Holding Corp. (K & J), a corporation of the State of New York, seeks specific performance of a contract for the purchase of real estate pursuant to an agreement entered into in its name as buyer, but executed prior to its incorporation. Defendant "seller" contends that there was no binding contract because (a) plaintiff was not in existence at the time the agreement was executed, and (b) "lack of mutuality" at that time deprives the agreement of enforceability.
*52 The facts have been stipulated and the parties file cross-motions for summary judgment.
In August 1969 defendant Keuffel & Esser Company (K & E) signed an agreement to sell certain property owned by it in Hoboken, New Jersey, for a purchase price of $750,000. The agreement was signed in plaintiff's name as buyer "by Benjamin Cohen, President." A check in the amount of $10,000 was received by K & E at or prior to the execution of the written agreement, $640,000 was to be paid upon delivery of the deed, and the remaining $100,000 was to be secured by a bond and purchase money mortgage of the premises. The instrument further provided for a lease back to K & E. At the time said instrument was executed no certificate of incorporation had been filed for plaintiff. A certificate was subsequently filed with the New York Secretary of State on October 31, 1969.
The agreement provided for a closing date of November 3, 1969. On that date the president of K & E wrote a letter to the attorney for K & J, stating that it had been discovered that incorporation papers had not been filed by K & J and that K & E considered that the purported written agreement was a nullity. Specifically, it was stated that "any contract for the sale of property purportedly entered into by a non-existent New York corporation under the name of K&J Clayton Holding Corp. * * * with Keuffel & Esser Company for the purchase from K&E of K&E's premises in Hoboken, New Jersey never existed and the contract is a complete nullity." A certified check returning the deposit of $10,000 was enclosed with the said letter.
Under date of November 18, 1969 K & E received a letter, dated November 13, 1969, from the attorney for K & J. It stated that K & J was ready, willing and able to close the title, that K & J would be present at the offices of K & E in Morristown, New Jersey, at 10 A.M., December 1, 1969, for the purpose of closing title and that time was of the essence. Representatives of K & E, K & J and Archie Schwartz Company, a broker, together with their attorneys and a *53 representative of American Title Insurance Company, met at the K & E offices on December 1, 1969. K & J's attorney stated that his client was ready, willing and able to close pursuant to the terms of the agreement. He offered a treasurer's check of the Trade Bank and Trust Company of New York City in the amount of $650,000 in payment of the cash provision of the agreement and offered to fulfill all the terms of the agreement on its part to be performed. A representative reiterated K & E's contention that there was no valid and existing agreement between K & E and K & J for the reason stated in its letter of November 3, 1969, and that K & E refused to close title. Defendant asserts no other reason for claiming the contract a nullity and does not claim any defect in the notice or tender made by plaintiff.
The fact is that there were two parties to this contract at the time of its execution. The agreement was signed on behalf of the buyer by the purported president of the embryonic or proposed corporation. As such he was a "promoter." Whether or not the corporation were later to "adopt" the contract, a promoter could be held liable thereon. See Note, "Promoters' Contracts: A Statutory Solution," 15 Rutg. L. Rev. 566, 573 (1961); 1 Fletcher, Cyclopedia of Corporations, § 215. Thus, defendant was not without a fellow contracting party against whom it could have enforced the agreement.
In the context of a promoter having executed the contract, the corporation later coming into existence, the corporation is entitled to all the rights thereunder as well as assuming full liability therefor. 1 Fletcher, op. cit., § 214, at 836-837. Even though the embryo corporation was not able to contract, yet it could adopt a contract made for its benefit. Ibid., §§ 207, 208. Having adopted the contract, the corporation may then sue for its enforcement. Cf. African Methodist Episcopal Church v. Conover, 27 N.J. Eq. 157 (Ch. 1876); Builders Duntile Co. v. W.E. Dunn Mfg. Co., 229 Ky. 569, 17 S.W.2d 715 (Ct. App. 1928), 1 Fletcher, op. cit. § 214; 2 Williston on Contracts (3d ed.), § 306 at *54 431, n. 18. One mode of adopting the contract is the institution of suit thereon by the corporation. Note, 15 Rutg. L. Rev. 566, at 572. Among the remedies available on such a suit is specific performance. 1 Fletcher, op. cit., supra, § 214 at 838, n. 46.
However, defendant persists in the assertion of "lack of mutuality." That concept has been the object of repeated judicial attempts to inter it. As stated in 11 Williston, op. cit., § 1433 at 883:
Rule of Mutuality of Remedy as Formerly Stated. Formerly, little or nothing in the law of specific performance gave rise to such confusion as the so-called rule requiring mutuality of remedy if the plaintiff was to be entitled to specific performance. The rule has been stated in the following terms:
A contract to be specifically enforced by the court must, as a general rule, be mutual,  that is to say, such that it might at the time it was entered into, have been enforced by either of the parties against the other of them. Whenever, therefore, whether from personal incapacity to contract, or the nature of the contract, or any other cause, the contract is incapable of being enforced against one party, that party is generally incapable of enforcing it against the other, though its execution in the latter way might in itself be free from the difficulty attending its execution in the former.

* * * * * * * *
While this "rule" had some significance some few decades ago, it has been quite generally repudiated, especially as the exceptions gradually swallowed it.
As stated in Fleischer v. James Drug Stores, 1 N.J. 138 (1948):
It is not essential that the remedy of specific performance be mutual. Mantell v. International Plastic Harmonica Corporation, supra. The modern view is that the rule of mutuality of remedy is satisfied if the decree of specific performance operates effectively against both parties and gives to each the benefit of a mutual obligation. Walter v. Hoffman, 267 N.Y. 365, 196 N.E. 291 (1936), 101 A.L.R. 919. Judge Cardozo said:
What equity exacts today as a condition of relief is the assurance that the decree, if rendered, will operate without injustice or oppression either to plaintiff or to defendant. * * * Mutuality of remedy is important in so far only as its presence is essential to the attainment of that end. The formula had its origin in an attempt to fit the *55 equitable remedy to the needs of equal justice. We may not suffer it to petrify at the cost of its animating principle.' Epstein v. Gluckin, 223 N.Y. 490, 135 N.E. 861 (1922). [at 149]
In Morad v. Silva, 331 Mass. 94, 117 N.E.2d 290 (Sup. Jud. Ct. 1954), it was said that "despite the fact that most of our decisions are in harmony with the modern rule, the ghost of mutuality still walks and, until laid, will continue to haunt our law." Williston concludes that the so-called rule of "mutuality of remedy" has gradually fallen into an "innocuous desuetude," and "its broader statements and implications have been generally discredited." And in Restatement, Contracts, § 372 at 677 (1932), the rule as to mutuality of remedy is stated thus:
(1) The fact that the remedy of specific enforcement is not available to one party is not a sufficient reason for refusing it to the other party.
In any event, the question is not whether mutuality existed at the time of the contract; it is enough that there is mutuality at the time of the decree or judgment. Gottlaub v. Cohen, 139 N.J. Eq. 323 (Ch. 1947); Horton v. Horton, 2 N.J. Super. 155 (Ch. Div. 1948). And filing a bill for specific performance of a land sale contract satisfies the requirement for mutuality of obligation. Teitleman v. Porter-Smith Co., 103 N.J. Eq. 412 (E. & A. 1928); Rapps v. Tulenko, 102 N.J. Eq. 207, 211 (Ch. 1928); Kamens v. Anderson, 99 N.J. Eq. 490 (Ch. 1926); South Jersey Furniture Corp. v. Dorsey, 95 N.J. Eq. 530, 535 (Ch. 1924), aff'd 99 N.J. Eq. 433 (E. & A. 1925); Cohen v. Pool, 84 N.J. Eq. 77 (Ch.), aff'd 84 N.J. Eq. 189 (E. & A. 1914); Krah v. Wassmer, 75 N.J. Eq. 109 (Ch. 1908), aff'd sub nom. Krah v. Radcliffe, 78 N.J. Eq. 305 (E. & A. 1911); Green v. Richards, 23 N.J. Eq. 32, 35 (Ch.), aff'd sub nom. Richards v. Green, 23 N.J. Eq. 536 (E. & A. 1872).
In Gottlaub v. Cohen, supra, Vice-Chancellor Bigelow pointed out that his research had discovered only one clear *56 case in which specific performance had been denied for lack of mutuality, viz, Burlew v. Hepps, 138 N.J. Eq. 425 (Ch. 1946), rev'd 2 N.J. Super. 336 (Ch. Div.), rev. aff'd 6 N.J. Super. 16 (App. Div. 1949). The learned vice chancellor cited many cases where the remedy had been granted "although, at the time the contract was made, the opposite party could not have maintained an action against the complainant." Gottlaub, at 139 N.J. Eq. 324. He went on to note that there had been a number of cases wherein specific performance was denied and in which "there is mention of mutuality," but the denial of the remedy rested on other reasons. Id. at 325. Among them were cases wherein the contract was not one of the class which will be specifically performed, e.g., suits involving personal services or in which the defendant would have only an action for damages if complainant should thereafter breach the contract.[1]
Vice-Chancellor Bigelow therefore rejected the decision of Vice-Chancellor Lewis in Burlew v. Hepps, supra, and held:
According to the great weight of our authorities, specific performance will not be refused merely because the contract, at the time it was entered into, could not have been enforced by the defendant against the complainant. * * * It is enough that there is mutuality at the time of the decree. [Gottlaub, 139 N.J. Eq. at 325]
After that decision, rehearing was had in Burlew v. Hepps before another Chancery judge, Vice-Chancellor Lewis having died in the meantime. Specifically following Gottlaub v. Cohen, Judge Grimshaw granted specific performance, 2 N.J. Super. 336 (Ch. Div.), aff'd 6 N.J. Super. 16 (App. Div. 1949). In Horton v. Horton, supra, Judge Freund likewise expressly rejected the first decision in Burlew v. Hepps, saying that Gottlaub v. Cohen had "overruled" (sic) it and *57 in doing so had stated the correct rule of law in holding that it is enough that there is mutuality "at the time of the decree." Horton, supra, 2 N.J. Super. at 157-158.
One case deserving of comment, however, is Macy Corp. v. Ramey, 75 Ohio Law Abst. 334, 144 N.E.2d 698 (Com. Pl. 1957). In Macy specific performance was denied to a buyer corporation which was not in existence at the time of the contract but was de jure at the time of the suit. Insofar as the decision relies on the asserted "mutuality of remedies" theory, I reject it as being flatly contrary to New Jersey law as set forth in Gottlaub v. Cohen, supra. Defendant there had repudiated the contract before Macy wes incorporated. Not so here. Further, throughout the Macy decision there pervade the equitable concepts of unclean hands, overreaching and fraud on the part of plaintiff corporation. There are no such stains on plaintiff's part here and, since defendant is getting all it bargained for, the equities lie with plaintiff.
In the instant attempt to inter the ghost of mutuality, it might do well to consider the reason for the rule even when it was recognized. In Note, 6 Univ. of Newark L. Rev. 287, 289 (1941), it was said:
The principal reason for the rule, was that equity would not compel specific performance by the defendant if after performance the common law remedy of damages would be his sole security for the performance of plaintiff's part of the contract.
And the note goes on:
The new mutuality doctrine, or as some writers contend a better interpretation of the old rule, lays down as the real test the question as to whether the defendant is reasonably assured that after his performance he will receive what he contracted for [Emphasis added]
11 Williston, op. cit., § 1433, at 886, quotes the following from the case of Schultz v. Campbell, 147 Mont. 439, 413 P. 2d 879 (Sup. Ct. 1965):
The old doctrine that mutuality of remedy must exist from the time a contract was entered into has been so qualified as to be of *58 little, if any, value, and many authorities have recognized that the only important consideration is whether a court of equity which is asked to specifically enforce a contract against the defendant is able to assure that he will receive the agreed performance from the plaintiff [Emphasis added]
And this is the test which we must apply here. Defendant's attempt at avoidance of the contract is based, to borrow a phrase, on a "hypothetical horrible,"[2] namely, that if defendant had attempted to enforce the contract against the plaintiff before the latter's incorporation, it could not have done so. As we have stated above, the contract could have been enforced against the promoter. In any event, plaintiff was in fact incorporated before the date when defendant was entitled to performance. Of more specific significance, defendant contracted to sell the property for $750,000, of which $650,000 was to be in cash, the balance to be secured by a purchase money second mortgage and there was to be a lease back to defendant from plaintiff. Plaintiff effectively offered to fulfill all of these terms on December 1, 1969, and of course must do so if specific performance is granted to it in this case. Defendant here is getting everything it bargained for. It is losing nothing. And it is perfectly secure. Indeed plaintiff has waived its right to make defendant's purchase money mortgage subject to a prior first mortgage in the amount of $500,000, and has agreed that defendant's mortgage for $100,000 is to be the first lien.
Plaintiff's motion for summary judgment is granted and that of defendant is denied. No costs.
NOTES
[1] See also Silverstein v. Abco Vending Service, 37 N.J. Super. 439, 448 (App. Div. 1955), and Sarokhan v. Fairlawn Memorial Hospital, Inc., 83 N.J. Super. 127, 135 (App. Div. 1964). In Silverstein the question of specific performance was by-passed pending final hearing on remand; while Sarokhan involved a contract for personal services, traditionally not enforceable by means of specific performance.
[2] Cf., Anderson v. Sills, 56 N.J. 210, 218 (1970).