**BLACKWOOD COAL COMPANY, INC.**

v.

**DEISTER CONCENTRATOR
COMPANY, INC.**

**Civ. A. No. 84–5104.**

United States District Court,
E.D. Pennsylvania.

Dec. 16, 1985.

Lawrence R. Scheetz, Richboro, Pa., for plaintiff.

Frank L. Tamulonis, Pottsville, Pa., for defendant.

## MEMORANDUM OPINION AND ORDER

HUYETT, District Judge.

Plaintiff initiated this action to recover damages allegedly caused by its detrimental reliance on a "performance guarantee" given by defendant Deister Concentrator Co. ("Deister") to entice plaintiff's corporate promoters to buy certain equipment manufactured and sold by defendant. Presently pending before me is defendant's motion for summary judgment or in the alternative for partial summary judgment. For the reasons set forth below, I shall grant the motion for partial summary judgment in part.

Sometime prior to April 1980, Jeffrey Sammak, then owner of a contracting business named SENACO, decided to enter the coal reprocessing business. In April 1980, he attended the "Coal Show" in Chicago at which he met representatives of defendant Deister. On August 15, 1980, Jeffrey Sammak and his brother, Douglas Sammak, formed the proposed coal reprocessing business and registered it under the fictitious name Blackwood Coal Company. A month later, in September, 1980, Douglas Sammak contacted the representatives from Deister and requested information pertaining to the possible purchase of machinery for the coal reprocessing operation.

John A. Christopherson, Director of Engineering at Deister, responded to Sammak's inquiry in a letter addressed to Mr. Douglas Sammak, Blackwood Coal Company, dated September 30, 1985. After citing certain technical data, including the claim that "[e]ach deck would remove approximately 2.25 TPH (tons/hour) of refuse and produce approximately 4 TPH of clean coal product," the letter stated:

> Deister guarantees that for a typical anthracite coal that the combination CONCENCO Refuse Superscalper—CONCENCO "88" Tables—Model HCRD will produce a coal product with an ash content that is within 2% of the theoretical ash of a float product at the intended specific gravity of separation.

> The performance figures given in the second paragraph of this letter are realistic and, therefore, considered conservative. The above system could handle a higher feed rate or a feed containing more or less than 50% refuse still produce a product consistent with your requirements.

See, Exhibit A, attached to defendant's motion for summary judgment. Sometime thereafter, pursuant to further conversations, Jeffrey Sammak verbally submitted the "coal washability data." Based on these data, John A. Christopherson wrote a second letter to the Blackwood Coal Company in which he stated the performance of the Scalper-Table which Deister guaranteed.

In its complaint, plaintiff contends that it has sustained incidental and consequential damages as the direct result of defendant's breach of express warranties, including the performance guarantee included in the two letters, as well as implied warranties of merchantability and fitness for a particular purpose under the Uniform Commercial Code. The purchase order for the equipment in question was placed on December 16, 1980. Plaintiff Blackwood Coal Company, Inc. was incorporated on January 21, 1981. Subsequently, on April 3, 1981, plaintiff corporation made a payment in the amount of $38,015 to defendant Deister for the equipment which payment defendant accepted. Plaintiff now seeks damages for the alleged breach of the warranties in excess of three million dollars.

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Small v. Seldows Stationary,* 617 F.2d 992 (3d Cir. 1980). The court does not decide any issues of facts but simply determines if there is an issue of fact to be tried. *Ettinger v. Johnson,* 556 F.2d 692 (3d Cir.1977). The facts must be viewed in the light most favorable to the opposing party, and any reasonable doubt as to the existence of a genuine issue of fact is to be resolved against the moving parties. *Continental Insurance Co. v. Bodie,* 682 F.2d 436 (3d Cir.1982).

*Standing*

Defendant's motion for summary judgment is based upon the contention that whatever the nature of the warranty or "performance guarantee" given by Deister, it cannot be enforced by plaintiff Blackwood Coal Company, Inc. in this action because plaintiff was not incorporated until January 21, 1981. Defendant contends that the contract and the warranties given, if any, were between Deister and either Jeffrey Sammak, Douglas Sammak, or the Blackwood Coal Company. Because corporate plaintiff was not in existence at the time the September 30, 1980 and November 24, 1980 letters were sent, the warranties contained therein could not have been intended to cover the plaintiff, and therefore, the corporate plaintiff does not have standing to assert the warranty claims.

In further support of this position, defendant provides a lengthy discussion of the law governing third party beneficiaries to warranties under the Uniform Commercial Code. I do not believe it is necessary to reach the merits of defendant's argument. Plaintiff is entitled to pursue its breach of warranty claims on any of several different theories which negate the necessity of finding it a third party beneficiary to the warranties.

First, for the purposes of this action, Jeffrey and Douglas Sammak should be viewed as pre-incorporation promoters.

Generally, a corporation does not exist as a legal entity until it is incorporated, and it, therefore, cannot have agents prior to its organization. 18 Am.Jur.Corporations § 120 (1985). A promoter's activities, however, may form the basis for corporate liability when pre-incorporation acts have been ratified by post-incorporation acts of the corporation. *Harnett v. Ryan Homes, Inc.,* 360 F.Supp. 878, 893 (E.D.Pa.1973), *aff'd.,* 496 F.2d 832 (3d Cir.1974); *McCloskey v. Charleroi Mountain Club,* 390 Pa. 212, 216–17, 134 A.2d 873, 876 (1957). The corporation's act of ratification relates back to the time of the original activities and establishes an agency relationship permitting the act of the promoters to constitute, in effect, acts done by the corporation. *Rees v. Mosaic Technologies, Inc.,* 742 F.2d 765 (3d Cir.1984); 3 Am.Jur.2d Agency § 160; *cf., Comprehensive Group Services Board v. Temple University,* 363 F.Supp. 1069 (E.D.Pa.1973).

"Proof of ratification need not be confined to formal acts of the board of directors as shown by the minutes of the meeting. It may be established from actions or from passive acquiescense of the directors if they had full knowledge of the facts...." *KoEune v. State Bank of Schuylkill Haven,* 134 Pa.Super. 108, 4 A.2d 234 (1939); 19 Am.Jur.2d Corporations § 125 (1985). Thus, some courts have held that even a corporation's act of suing on a preincorporation contract is in itself an adoption of the contract. *K & J Clayton Holding Corp. v. Keuffel & Esser Co.,* 113 N.J.Super. 50, 272 A.2d 565 (1971); *Windsor Hosiery Mills v. Haren,* 220 Tenn. 6, 413 S.W.2d 676 (1967).

Blackwood Coal Company, Inc. clearly ratified the acts of Jeffrey Sammak and Douglas Sammak. Prior to January 21, 1981, operating as Blackwood Coal Company, the Sammaks had engaged in all phases of forming the business, including negotiating the contract in dispute here. After January 21, 1982, Blackwood Coal Company, Inc. accepted delivery of the equipment from Deister and paid for it. In addition, on a number of occasions after payment,

Blackwood Coal Company, Inc. attempted to enforce the "performance guarantee" and express warranties. These actions reflect ratification, adoption or acceptance of the pre-incorporation contract by the corporation.

Because a corporation can be held liable for a contract which it has ratified, *Rees v. Mosaic Technologies, Inc.*, 742 F.2d 765, 768 (3d Cir.1984), it necessarily follows that the corporation should also have the right to enforce the terms of the contract including any warranties. Therefore, "[a] corporation that has ratified or adopted a contract made for it by its promoters may, after its formation, sue to enforce the contract or to recover for its breach." 18 Am.Jur.2d Corporations § 130 (1985); *K & J Clayton Holding Corp. v. Keuffel & Esser Co.*, 113 N.J.Super. 50, 272 A.2d 565 (1971); *Speedway Realty Co. v. Grasshoff Realty Corp.*, 248 Ind. 6, 216 N.E.2d 845 (1966); *D.D.J. Electrical Contractors, Inc. v. Nanfito & Sons Builders, Inc.*, 40 Conn. Sup. 50, 479 A.2d 1250 (1984).

Another way of analyzing the situation is in terms of the assignment of rights; under this approach defendant's contentions again fail. As plaintiff contends, Douglas Sammak, Jeffrey Sammak, and Blackwood Coal Company assigned all of their rights and obligations to and from Deister Concentrator Company to Blackwood Coal Company, Inc. at the time of incorporation. Under 13 Pa.C.S.A. § 1201, "rights" that are assignable include remedies so long as the assignment will not materially change the duty of the other party or materially increase the burden or risk to that party. Assignment of the sales contract here does not increase the obligations of defendant or affect its potential risk and therefore pursuant to § 1201, plaintiff has the right to seek recovery for any breach of warranty.

Finally, I believe that defendant is estopped from raising the issue of whether plaintiff has standing to claim a breach of the warranty. Defendant delivered the equipment to plaintiff and accepted payment from plaintiff without objection. Moreover, after the alleged problems became apparent to plaintiff, defendant contacted plaintiff directly and several of defendant's representatives visited the plant operated by the incorporated entity. Accordingly, I believe that it is late for defendant to be raising this issue. For all of these reasons, I will deny defendant's motion for summary judgment based on the standing issue.

### Scope of Warranty

Defendant next contends that any express warranty or "performance guarantee" is expressly excluded or limited by the language of the letter of November 24, 1980, the proposal of December 12, 1980, and the acknowledgement of December 30, 1980. The language of these documents when considered together, defendant contends, establishes that the sole remedy for breach of warranty or "performance guarantee" is the return of the equipment, f.o.b. the company's plant, in exchange for a refund of the purchase price, or in the alternative, the repair and replacement of any part found to be defective. Therefore, defendant contends, plaintiff is not entitled to recover any incidental or consequential damages.

Defendant's contentions present issues which I do not believe can be resolved at this time in a motion for summary judgment. First, I note that the language in the letter dated November 24, 1980 to Jeffrey Sammak at the Blackwood Coal Company states that items "may be returned to our factory;" it does not include any language to the effect that return is the sole remedy. Therefore, there is a triable issue as to what the relationship is between this letter and other warranties such as that in the document dated December 12, 1980. Moreover, it appears that the Sammaks were not experienced coal operators and defendant knew or had reason to know this. Thus, the correspondence between the parties beginning in the spring of 1980 appears to reflect a course of conduct whereby defendant assured the Sammaks

that its product would produce the desired results and that the Sammaks relied upon these assurances in placing their purchase order.

There is also some dispute as to exactly what the "performance guarantee" was. Was it an express warranty? Is it a separate guarantee of performance? Plaintiff does not claim that the equipment was defective but rather contends that the equipment was incapable of performing to the level defendant claimed it would. The standard warranty would probably cover defects in manufacturing but whether it was intended to cover the performance guarantee is unclear. Again, these are mixed issues of fact and law which cannot be resolved at this stage. Therefore, I will not grant this aspect of defendant's motion.

*Damages*

Defendant also contends that as a matter of law, plaintiff is not entitled to recover damages for loss of good will or loss of future profits. I will examine these contentions *in seriatim*.

In paragraph 18 of its complaint, plaintiff alleges that it has sustained damages in excess of three million ($3,000,000) dollars, including incidental and consequential damages. Under Pennsylvania law, plaintiff may not recover for the loss of good will or customer satisfaction. *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848 (1968); *Harry Rubin & Sons, Inc. v. Consolidated Pipe Co. of America*, 396 Pa. 506, 153 A.2d 472 (1959). Defendant contends therefore that it is entitled to judgment as to plaintiff's claim for loss of good will and that plaintiff should be precluded from introduction of any evidence as to this issue. Plaintiff, in its response to the motion for summary judgment, does not address the issue of loss of good will at all. I agree with defendant's position and will therefore dismiss plaintiff's claim for loss of good will damages.

Defendant also asserts that plaintiff's claim for loss of future profits or future economic damages is speculative as a matter of law because plaintiff was a new and untried corporate entity at the time of the alleged breach giving rise to the damages sought. In support of its position that profits of a new and untried business are too speculative to provide a basis for an award of damages, defendant cites *Exton Drive-In, Inc. v. Home Indemnity Co.*, 436 Pa. 480, 261 A.2d 319 (1970). The *Exton* court concluded that anticipated profits were too speculative to support an award of damages, but the court carefully limited its holding to the facts of the case. "Under the circumstances of this case, we hold that the anticipated profits of a new and untried business which were attributable solely to the unfinished condition of the business premises were too speculative to provide a basis for an award of damages. *Exton*, 261 A.2d at 324. *Exton* arose out of the failure of a contractor to complete the grading and paving of a site for a drive-in motion picture theater within the contracted time period. The court concluded in part that the damages were too speculative because at the time of the completion of the paving work, the movie screen had still not been erected.

More recently in *Merion Spring Co. v. Muelles Hnos. Garcia Torees*, 315 Pa.Super. 469, 462 A.2d 686 (1983), the court concluded that there have been no Pennsylvania cases in which it has been held that new businesses cannot as a matter of law submit sufficient evidence to obtain an award for lost profits. The court noted that it is often very difficult for a new business to obtain such proof and what is often presented is far too speculative to support an award of damages for future lost profits, but the party seeking the damages should be given an opportunity to present the available evidence. In *Exton*, the certainty barrier was simply an "insurmountable barrier" which precluded an award for lost anticipated profits.

I believe that *Merion Spring Co.* suggests the proper approach in cases of this kind. While defendant is correct that plaintiff will have a very difficult path to hoe to establish its claim for damages to

732

lost future profits, I cannot hold as a matter of law that its claim for these damages should be dismissed.