# Staunton

## MORTON MARKS AND SONS, INCORPORATED v. HILL-CHASE STEEL COMPANY OF MARYLAND.

September 8, 1954.

Record No. 4251.

Present, All the Justices.

The opinion states the case.

*Wallerstein, Goode, Adamson & Dobbins,* for the plaintiff in error.

*Wilbur G. Mitchell* and *George W. Reilly,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Hill-Chase Steel Company of Maryland, hereinafter called the plaintiff, filed a motion for judgment against Morton Marks and Sons, Incorporated, hereinafter called the defendant, to recover the sum of $4,378.97, that being the balance of the selling price of certain processed steel alleged to have been sold by the plaintiff to the defendant. The defendant filed grounds of defense denying its promise to pay, or liability for, the price of the materials. There was a trial by a jury which resulted in a verdict for the plaintiff for the full amount claimed, upon which the trial court entered judgment, and the matter is before us on a writ of error granted the defendant.

The main question is whether the evidence is sufficient to sustain the verdict. There is no dispute as to the amount involved, but the defendant claims that the evidence adduced compels a finding that the merchandise was not sold to or purchased by it, but was sold to and purchased by Commonwealth Steel Products Corporation, a corporation allied with the defendant in the manner to be related and now admittedly insolvent. The issue is one of fact and its decision turns upon the application of elementary principles of law.

Hill-Chase Company is engaged in the business of processing and selling rolled steel, with its principal place of business in Baltimore, Maryland. Marks and Sons is engaged in the business of manufacturing office furniture at 1217 East Main street, in Richmond, Virginia. Its officers are Morton Marks, president, Adolph H. Marks, first vice-president,

Merle B. Marks, second vice-president, and Herbert S. Marks, secretary and treasurer. These four with Hannah D. Marks and Morton Marks, Jr., constitute its board of directors. Adolph H. Marks is the active directing head of this concern.

Early in 1951 Marks and Sons began the manufacture of metal office furniture. On March 12 Kingsbery W. Gay, the district sales manager of Hill-Chase Company, called upon Marks and Sons to solicit orders for steel products to be supplied by his principal. He was directed to Adolph H. Marks as "the man to talk to" and was successful in procuring orders for materials to be shipped and delivered to Marks and Sons at its plant in Richmond. Between that date and February, 1952, Adolph H. Marks gave Hill-Chase Company a number of orders for materials which were accepted and filled.

Commonwealth Steel Products Corporation was chartered by the State Corporation Commission of Virginia on May 18, 1951, and its organization meeting held sometime in the following August. Among its officers were Adolph H. Marks, president, Herbert S. Marks, vice-president, and Joseph H. Lucas, secretary. The record does not disclose the names of the other officers and directors. Adolph H. Marks was likewise the active directing head of this corporation. Apparently it was the purpose of Commonwealth Corporation to take over the business of manufacturing the steel office furniture which had been carried on by Marks and Sons, and to that end Commonwealth Corporation established a plant and office at 1112 East Cary street, in the city of Richmond, where it commenced operations early in October, 1951.

Gay, the district sales manager for Hill-Chase Company, was informed of this plan and was requested in the future to ship the materials and extend credit therefor to Commonwealth Steel Products Corporation. It is undisputed that while Gay agreed to have the materials delivered to Commonwealth Corporation, he clearly and positively declined to extend credit to that corporation, saying that he had no

authority to change the account, that he "would have to sell Morton Marks and Sons," and look to it for payment of the bills.

William S. Patterson, sales manager for Hill-Chase Company, testified that despite repeated requests to change the account and extend credit to Commonwealth Corporation, "I told them we definitely could not sell Commonwealth Steel Company due to the credit situation that existed, it would have to be continued to be billed through Morton Marks," and that this arrangement was understood by and "agreeable to both" Morton Marks, the president of Marks and Sons, and Adolph H. Marks, the directing head of both corporations.

Indeed, Adolph H. Marks testified on direct examination that he took up with Penny, the credit manager of Hill-Chase Company, the matter of changing the account but Penny "would never change it."

The evidence is likewise undisputed that during the months of June, July, September and October, 1951, Adolph H. Marks forwarded in the name of Marks and Sons five written orders for materials. These orders were filled during the months of July, August, October and November, and while the materials were shipped to Marks and Sons they were used by Commonwealth Corporation. Marks and Sons admits its liability for these orders, the last of which was dated October 23, 1951.

The present controversy concerns the liability of Marks and Sons for the balance due on the selling price of materials which were delivered in January and February, 1952. The total amount of these invoices is $10,240.88, of which $5,861.91 has been paid, leaving a balance due thereon of $4,378.97. There is a conflict in the evidence as to how and when these materials were ordered. Witnesses on behalf of the plaintiff testified that all of these materials were ordered verbally in telephone conversations between Adolph H. Marks representing the purchaser, and Frank B. Bauer

representing the seller, and that its records so show. Adolph H. Marks testified that he forwarded to Hill-Chase Company two written purchase orders for these materials in the name of Commonwealth Steel Products Corporation, one order numbered 118 bearing date December 3, 1951, and the other order numbered 123, showing no date. While witnesses for Hill-Chase Company admit that it may have received such purchase orders in confirmation of the verbal orders, despite a diligent search of the seller's records no such original purchase orders could be found. These latter witnesses further testified that had the seller subsequently received such written purchase orders it would not have regarded Commonwealth Corporation as the purchaser of the materials because it, the seller, had declined to sell to that concern.

At any rate, the materials covered by these orders were delivered in January and February, 1952. The seller's records show that some of the materials were shipped to Marks and Sons and some to Commonwealth Corporation. Within a few days of each shipment, invoices for the price of the material were sent to Marks and Sons. Each invoice shows clearly on its face that the listed material was "Sold to Morton Marks and Sons, 1217 E. Main St., Richmond 19, Va.," and to which of the two corporations it had been shipped. Each invoice bears the written approval or "O. K." of Adolph H. Marks. In each instance the purchase price of the material was charged on the plaintiff's books to Marks and Sons. Moreover, bills for the materials were sent regularly to and received by Marks and Sons. Not until months later and after Commonwealth Corporation had run into financial difficulties did Marks and Sons deny liability for the purchases. In the meantime Commonwealth Corporation had forwarded to Hill-Chase Company, from time to time, five checks of $1,000 each, which were applied on the purchase price of the materials.

The jury's verdict has, of course, settled the conflicts in

the evidence in favor of the plaintiff. The evidence which the jury has accepted amply supports the verdict. As has been said, the witnesses on behalf of the plaintiff are clear and positive in their testimony that the plaintiff sold the materials to Marks and Sons and extended credit to it and refused to sell to Commonwealth Corporation. It is undisputed that all of the transactions for the purchase of these materials were handled on behalf of the purchaser by Adolph H. Marks, the vice-president of Marks and Sons, who at the inception of his transactions with the seller was acting for Marks and Sons. According to the plaintiff's witnesses, in ordering the materials, Adolph H. Marks said or did nothing to indicate that there had been a change in his principal and that he was acting for Commonwealth Corporation and not for Marks and Sons. While the representatives of the plaintiff knew of the organization of Commonwealth Corporation and the fact that it was using some of the materials which the plaintiff was supplying, as has been said, it is undisputed that these representatives refused to sell or extend credit to that corporation.

It is true, as the defendant argues, that a meeting of the minds of the contracting parties is necessary to a contract of sale. But the question here is not whether a contract was entered into, but which of the corporations was bound as the contracting party or purchaser. The plaintiff's evidence clearly shows that Marks and Sons was the purchaser of the materials although they were delivered to and used by Commonwealth Corporation. There is nothing unusual in a sales contract of this character. It is elementary that, "Where goods are furnished to one person on the promise of another to pay therefor, the person making such promise is liable upon his promise." 46 Am. Jur., Sales, § 40, p. 232. The fact that payments on account of the purchase price were made by Commonwealth Corporation does not of itself establish that the sale was made to the latter. This was merely a circumstance to be considered by the jury along with all of the other evidence in determining which of the

two corporations was the buyer. 77 C. J. S., Sales, § 11, p. 600.

Of similar significance and effect was the fact that the plaintiff wrote directly to Commonwealth Corporation about filling the orders for, and its shipment of, some of this material which the plaintiff knew was to be delivered to that concern.

Under the evidence adduced, it was for the jury to say whether the sale was made and credit extended to the defendant, and their verdict has settled the issue in favor of the plaintiff. 77 C. J. S., Sales, § 12, p. 601.

Complaint is made of the italicized portion of Instruction No. 3:

"The court instructs the jury that if the jury believes from a preponderance of the evidence that the account with the plaintiff was originally opened by Morton Marks and Sons, Incorporated; that for a period of time the parties dealt upon the credit of Morton Marks and Sons, Incorporated; *that no formal notice of a change in the purchaser was given to plaintiff;* that plaintiff declined to deal with any other concern except upon the basis of the charge to Morton Marks and Sons, Incorporated; and that the representatives of said defendant were so advised, then the verdict of the jury should be for the plaintiff in the sum of $4,378.97 with interest from December 5, 1952." (Italics supplied.)

The defendant argues that it "was under no legal duty to give 'formal notice' (whatever 'formal' may mean to a jury), or *any* notice," that it was not the purchaser of the materials and that Marks was not acting as its agent in ordering them.

The purpose of the italicized language was to tell the jury that if they believed from the evidence that the parties had dealt for a period upon the basis that credit had been extended to Marks and Sons, through Adolph H. Marks, its agent, to avoid future liability for purchases made by him, Marks and Sons should have given the plaintiff "formal

notice of a change in the purchaser," that is, that in making these later purchases Marks was not acting as the agent of Marks and Sons, but as the agent of Commonwealth Corporation.

We do not agree with the contention that the plaintiff was not entitled to "any notice" that Adolph H. Marks was not acting as the agent of the defendant in making these purchases. The evidence is undisputed that for months Adolph H. Marks, as agent of the defendant, had been ordering materials from the plaintiff, and the main contention of the defendant is that in making the particular purchases with which we are concerned he had ceased acting for the defendant and was acting for Commonwealth Corporation. It is well settled that "the acts of an agent, within the apparent scope of his authority, are binding on the principal as against one who had formerly dealt with him through the agent and who had no notice of the revocation. This is especially so with reference to transactions initiated by the agent before the revocation of his authority. This rule has been applied in favor of persons who have continued to deal with insurance agents, *purchasing agents*, and the like, without notice of the principal's revocation of their authority." (Italics supplied.) 2 Am. Jur., Agency, § 44, p. 42. See also, 2 C. J. S., Agency, § 77-b, p. 1166; 1 Mich. Jur., Agency, § 48, pp. 312, 313.

The use of the word "formal" in the instruction was improper as it was susceptible of the interpretation that written notice was necessary, whereas any "clear" actual notice would have sufficed. "Any notice by which the third person is clearly informed that an agency has terminated is sufficient." 2 C. J. S., Agency, § 77, p. 1167. See also, 2 Am. Jur., Agency, § 45, p. 43; Mechem on Agency, 2d Ed., Vol. 1, §§ 634, 635, pp. 452, 453. However, in objecting to the instruction in the lower court there was no complaint that the word "formal" in itself was improper or misleading. The position was that the plaintiff was not en-

titled to any notice that Marks was no longer acting for the defendant in making these purchases.

On the whole we are of opinion that the jury were fully and fairly instructed on all of the issues and that there is no reversible error in the record. Accordingly, the judgment is

*Affirmed.*