[No. 25644–1–I.   Division One.   July 8, 1991.]

AMERICAN SEAMOUNT CORPORATION, ET AL, *Appellants,* v.
SCIENCE AND ENGINEERING ASSOCIATES, INC.,
*Respondent,* J. STANTON KECK,
ET AL, *Appellants.*

*John C. Peick, Trujillo & Peick* and *Stanley G. Bakun,* for appellants.

*Daniel W. Ferm* and *Williams, Kastner & Gibbs,* for respondent.

AGID, J.—Plaintiffs below, American Seamount Corporation (Seamount), DBK Resources, Inc. (DBK), and Drummond Maritime International, Inc. (Drummond, Inc.) (hereinafter collectively Plaintiffs) appeal a summary judgment order dismissing Plaintiffs' claims against Science and Engineering Associates, Inc. (SEA). Third party defendants J. Stanton Keck and John Bevan appeal a second summary judgment order holding them personally liable for attorney fees SEA incurred in its defense. We affirm.

The central figure in the events culminating in this appeal is Jerry Riehl, a chemist who specializes in nuclear science. Beginning in February 1983, SEA employed Riehl as a part-time consultant for SEA clients. Shortly thereafter, third party defendants Keck and Bevan asked Riehl to provide consulting services for a business venture involving incineration of hazardous wastes at sea. The promoters of the venture included Keck, Bevan, DBK and Drummond, Inc.

In June 1983, Riehl attended an incineration project meeting with Keck, Bevan and several others involved in the project. At the promoters' request and after consulting with SEA, Riehl signed a "Confidential Consultation Agreement" under which he agreed not to disclose confidential or proprietary information, or to compete with the incineration project. The agreement provides that it is "by and between SEAMOUNT CORPORATION including its owners/promoters . . . and Jerry A. Riehl". Riehl signed the agreement as "Consultant".[1] Keck and another promoter, Paul Drummond, each signed for Seamount as "Rep.". Significantly, when the parties executed this agreement Seamount was still not formally incorporated; its certificate of incorporation as American Seamount Corporation is dated August 9, 1983.

SEA billed DBK for Riehl's services throughout the summer of 1983. SEA's invoices were not paid and in late August, SEA instructed Riehl to discontinue working on the Seamount project. Riehl informed the Seamount venturers of SEA's decision. He decided, however, to continue to work on the project in his personal capacity on his own time. In return, Seamount agreed to compensate Riehl directly if the venture succeeded.

In January and February 1984, Riehl and Drummond began marketing the incineration project to potential investors as the work of "Environmental Oceanic Services" (EOS). Riehl and Drummond incorporated EOS in April 1984. By that time, Riehl was no longer employed by SEA, which had laid him off in March 1984.

Seamount, DBK and Drummond, Inc., filed an action against Riehl, SEA and Drummond for breach of the confidential consulting agreement. SEA joined Keck and Bevan as third party defendants. SEA moved for summary judgment of dismissal of all claims against it. The trial judge granted SEA's motion. Based on an attorney fee provision

---

[1] The parties agree that Riehl entered into the agreement as SEA's agent, and that SEA is therefore a party to the agreement.

in the Confidential Consultation Agreement, SEA then sought a summary judgment award of $17,803.39 in attorney fees and costs from Bevan, Keck, Seamount, DBK and Drummond, Inc. The court granted SEA's motion. The remaining parties eventually settled and this appeal followed.

### SEA's Liability

Plaintiffs first contend that the trial court erred in dismissing their claims against SEA. They assert that summary judgment was improper in light of the evidence that Riehl executed the Confidential Consultation Agreement on SEA's behalf and that he violated that agreement while still an SEA employee. This evidence, they argue, was sufficient to raise a genuine issue as to whether SEA should be liable as principal for Riehl's alleged misdeeds. We disagree.

It is undisputed that in August 1983, SEA instructed Riehl to cease working with Seamount as its agent, and thus revoked Riehl's authority to act in its behalf in any further transactions with Seamount. It is also undisputed that Riehl advised the Seamount venturers of SEA's action, and entered into an agreement to continue working with Seamount in his personal capacity. This alone is enough to defeat Seamount's argument. Once a third party receives notice that an agent's authority is revoked, the principal will not be liable to that party for the agent's postrevocation acts. *West Denver Feed Co. v. Ireland,* 38 Colo. App. 64, 551 P.2d 1091, 1093–94 (1976); *Morton Marks & Sons, Inc. v. Hill–Chase Steel Co.,* 196 Va. 268, 83 S.E.2d 356, 360 (1954); *cf. Parker v. Advance Thresher Co.,* 75 Wash. 505, 509, 135 P. 229 (1913) (citing rule that a general agency is presumed to continue as to third persons dealing with the agent until notice of revocation).

Furthermore, once SEA withdrew Riehl's authority to work with Seamount on its behalf, Riehl's acts were no longer within the scope of his agency. A corporation is only liable for acts committed by an employee when the acts are committed within the scope of the employee's

actual or apparent authority. *Houser v. Redmond,* 91 Wn.2d 36, 40, 586 P.2d 482 (1978); *Mauch v. Kissling,* 56 Wn. App. 312, 316, 783 P.2d 601 (1989). Apparent authority is inferred from the principal's acts, not from the acts of the agent.[2] *Schoonover v. Carpet World, Inc.,* 91 Wn.2d 173, 178, 588 P.2d 729 (1978); *Mauch,* 56 Wn. App. at 316. It arises when the principal places the agent

> in such position that persons of ordinary prudence, reasonably conversant with business usages and customs, are thereby led to believe and assume that the agent is possessed of certain authority, and to deal with him in reliance upon such assumption.

*Lumber Mart Co. v. Buchanan,* 69 Wn.2d 658, 662, 419 P.2d 1002 (1966). Here, even when construed most favorably to Seamount, the nonmoving party, the record contains no evidence from which reasonable people could conclude that SEA somehow caused Seamount to believe that anything Riehl did after August 1983, he did as SEA's agent. SEA cannot, therefore, be subject to principal liability for Riehl's formation of EOS.

## ATTORNEY FEES

Third party defendants Keck and Bevan also challenge the trial court's grant of SEA's motion for attorney fees. They argue that it was improper for the court to impose liability on them because they were not plaintiffs in this matter, and in fact were joined as third party defendants by SEA. However, as we point out more fully, *infra,* under the facts of this case Keck's and Bevan's status as litigants is not determinative. Keck and Bevan also assert that under the facts of this case, their position as preincorporation promoters cannot serve as a basis for awarding attorney fees. Specifically, they argue that absent a breach by them of some performance obligation, their status as corporate promoters cannot give rise to personal liability. We view the obligation to pay fees to the prevailing party as

---

[2] Seamount's assertion that Riehl continued to hold himself out as an SEA consultant through March 1984 is, therefore, irrelevant.

one of the obligations under the contract and, therefore, reject this argument.

The rules governing promoter liability are well settled. Ordinarily, a corporate promoter is personally liable on any contracts he or she makes for the benefit of a corporation not yet in existence.[3] *E.g., Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 478–79, 670 P.2d 648 (1983); *see also* RCW 23B.02.040 and former RCW 23A.44-.100. The subsequent organization of the corporation does not discharge the promoter from liability, unless the parties agree that his or her liability should cease at that time. Annot., *Personal Liability of Promoter to Third Person on or With Respect to Contract Made for Corporation or in Aid of Promotion*, 41 A.L.R.2d 477, § 14 (1955). Similarly, absent agreement of the parties, a promoter will not be discharged from contractual liability if the corporation subsequently adopts or ratifies his contract. A plaintiff can ordinarily, therefore, look to both the promoter and the corporation for compensation for a breach of the preincorporation contract. Annot., 41 A.L.R.2d at 512–13; 1A W. Fletcher, *Private Corporations* § 215 (1983).

The instant case is not directly governed by these rules because this litigation does not involve a breach by the corporation or its promoters. Instead, this case involves Seamount's attempt to enforce its promoter's contract against Riehl and his former employer. "A corporation that has ratified or adopted a contract made for it by its promoters may, after its formation, sue to enforce the contract or to recover for its breach." 18 Am. Jur. 2d *Corporations* § 130, at 946 (1985); *accord,* 1A W. Fletcher § 214; *see also Blackwood Coal Co. v. Deister Concentrator Co.*, 626 F.

---

[3]The promoter will not be liable, however, if the contracting party knew at the time of contracting that the corporation was not in existence, and agreed to look solely to the corporation for performance. *Goodman v. Darden, Doman & Stafford Assocs.*, 100 Wn.2d 476, 479, 670 P.2d 648 (1983); *see also* RCW 23B.02-.040 (no promoter liability to person who knew there was no incorporation). No evidence of such an agreement exists in the record before this court.

Supp. 727, 730 (E.D. Pa. 1985); *Hog Heaven Corp. v. Midland Farm Mgt. Co.*, 380 N.W.2d 756 (Iowa Ct. App. 1985). A corporation entitled to enforce its promoters' contracts does not need to include the promoter as a party plaintiff. *Hog Heaven*, 380 N.W.2d at 757; *Blackwood Coal Co.*, 626 F. Supp. at 729.

Again, however, the established rules are not directly applicable. The question here is whether in a suit brought by a corporation and its corporate promoters on a preincorporation contract, a prevailing defendant can enforce the contract's attorney fee provision against individual promoters who did not voluntarily join the action as plaintiffs. No authority addressing this precise question has been located. For the reasons set out below, we hold that under the facts of this case, the nonplaintiff promoters are properly held liable for defendant's fees.

First, by including some of Seamount's corporate promoters as party plaintiffs, Seamount conceded that its promoters are the real parties in interest in this litigation. In light of that fact, it would be patently unfair to limit SEA's right to enforce the confidential consulting agreement's fee provision as to only some of these real parties in interest simply because others chose not to join the suit as plaintiffs.

Second, Seamount's attorney conceded at oral argument that DBK owns Seamount, and that Keck and Bevan, the individuals against whom fees were ordered and who chose not to sue individually, are two of DBK's three shareholders. It follows that had Seamount and DBK prevailed against SEA, the liquidated damages and attorney fees sought by DBK and Seamount in this litigation would ultimately have gone to Keck and Bevan. In this situation, it is not unreasonable to require Keck and Bevan to accept the risks of litigation as well as the benefits.

The third reason upon which we rely relates to the second. Promoters are individually liable under preincorporation contracts even when the breach occurs or the duty to comply arises after incorporation. *Goodman,* 100 Wn.2d

at 477–78. One of the duties under this contract was to pay fees to the prevailing party if the other party's enforcement suit was unsuccessful. Keck and Bevan were properly held liable for those fees when the subsequently formed corporation failed in its attempt to sue on the contract. To hold otherwise would allow promoter/incorporators such as Keck and Bevan to benefit from their corporation's successful enforcement of a contract but to escape liability under a mutual attorney fees provision when their corporation's suit is unsuccessful.

The summary judgment orders are affirmed. Pursuant to RCW 4.84.330, SEA is awarded its reasonable attorney fees provided it meets the requirements of RAP 18.1. In so holding, we emphasize that the principle of equal distribution of benefits and obligations under the preincorporation contract upon which we rely would not necessarily apply if Keck and Bevan were no longer in a position to benefit from a successful suit on the contract by the subsequently formed corporation. In the circumstances here, however, application of this principle is consistent with and furthers the rules of promoter liability enunciated in *Goodman,* Annot., 41 A.L.R.2d § 14, and 1A W. Fletcher, *supra.*

FORREST and KENNEDY, JJ., concur.